KELLEY v. AARONS et al.

In re GIBRALTAR INVESTMENT & HOME BLDG. CO.

(District Court, S. D. California, S. D. January 11, 1917.)

1. BANKRUPTCY ⬤═282—UNPAID STOCK SUBSCRIPTIONS—SUIT IN EQUITY.
    Where a corporation became bankrupt although stock subscriptions to a considerable amount were unpaid, the trustee in bankruptcy may maintain a representative suit in equity against the subscribers, who numbered about 3,000, many of whom were insolvent; it appearing that a collection of the subscriptions from the solvent stockholders was necessary to discharge the corporate liabilities.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 426; Dec. Dig. ⬤═282.]

2. CONSTITUTIONAL LAW ⬤═70(1)—PROVINCE OF JUDICIARY.
    It is the province of the judiciary to declare the law as it is, and not as the court deems it.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129, 132, 137; Dec. Dig. ⬤═70(1).]

3. BANKRUPTCY ⬤═293(1)—TRUSTEES—RIGHTS OF—PLENARY SUIT.
    Bankr. Act July 1, 1898, c. 541, § 2, cl. 7, 30 Stat. 545 (Comp. St. 1913, § 9586), declares that courts of bankruptcy shall have jurisdiction to cause

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as otherwise provided, while section 23b (Comp. St. 1913, § 9607) declares that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or instituted them if proceedings in bankruptcy had not been instituted. A corporation became a bankrupt, although subscriptions to its capital stock were unpaid. Many of the subscribers were nonresidents, and the trustee in bankruptcy sought to sue the subscribers generally by a plenary suit in the District Court of the corporation's residence, where the bankruptcy occurred. *Held* that, as the trustee could sue only where the bankrupt could sue, the District Court was without jurisdiction; for, while the bankrupt could not have maintained a suit in equity, it could have maintained actions at law for the same relief in courts having jurisdiction over the defendants.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411; Dec. Dig. ☞293(1).]

4. BANKRUPTCY ☞293(1)—COURTS—JURISDICTION—DENIAL.

In view of the limited jurisdiction of federal District Courts under the Bankruptcy Act, jurisdiction to entertain a suit in the nature of a plenary suit must be denied, unless shown to exist.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411; Dec. Dig. ☞293(1).]

In Equity. Suit by S. F. Kelley, trustee of the Gibraltar Investment & Home Building Company, a corporation, bankrupt, against Fredericka Aarons and about 3,000 other defendants. Motion of Thomas Gill to dismiss on the ground of want of jurisdiction sustained, and other motions held in abeyance to permit review.

William B. Ogden and Ralph E. Esteb, both of Los Angeles, Cal., for plaintiff.

A. L. Abrahams, of Los Angeles, Cal., for defendant Gill.

BLEDSOE, District Judge. A petition was filed in this court in the bankruptcy proceeding above referred to, setting forth that the above-named bankrupt was a corporation organized under the laws of the state of California, with a capital stock of $2,000,000, divided into 20,000,000 shares of the par value of 10 cents each; that from the claims on file it would be necessary to raise the sum of about $150,000 in order that all of the indebtedness of the said bankrupt and the cost of administration might be paid, and that the only property in the estate other than the unpaid subscriptions to capital stock consisted of an interest in a conditional sale contract of problematical value; that over $4,000,000 of the capital stock of the corporation had been subscribed for and purchased, but a part only of that agreed to be purchased had been paid for, and that there remained unpaid on said purchase price and long past due, according to the terms of the contracts to purchase, about the sum of $480,971.23; that a large majority of the said subscribers and purchasers of said stock are insolvent, and a great many others are nonresidents of the state of California; and that it would require the collection of the full amount remaining due on stock from solvent resident parties in order that sufficient money might be realized therefrom to satisfy the claim

of creditors and pay the cost of administration. Wherefore it was asserted that it was absolutely necessary that payment be ordered of all unpaid subscriptions.

Pursuant to such petition, an order was made, in accordance with the usual practice obtaining, for the payment to the trustee of the unpaid balances due from the various subscribers to capital stock, and, in the event of failure to pay such balances, the trustee was authorized and directed "to institute a suit in equity" to enforce the collection thereof, etc.

Such suit has been commenced in this court against the stockholders referred to, approximating 3,000 in number, in equity, and motions have been made to dismiss the bill of complaint upon various grounds, only one of which, however, will be adverted to at any length herein.

[1] Despite the able and insistent arguments of counsel for defendants, I am persuaded that the suit is properly brought on the equity side of the court. The fact that it is a proceeding to enforce the collection of a trust fund, and also because of the great number of defendants and the fact that only such an amount as will be necessary to pay the debts and expenses of administration of the bankrupt corporation can, in any event, be collected from the solvent stockholders, makes it necessary that one suit in equity should be prosecuted in order that, by an equitable collection and distribution of the assets such as is possible only in a court of equity, complete relief may be had and complete justice may be done in the premises. See Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731; Patterson v. Lynde, 106 U. S. 519, 1 Sup. Ct. 432, 27 L. Ed. 265; Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220.

[2] The question of the jurisdiction of this court, however, to entertain the suit at all, has given me the greatest concern. Individually, for reasons of economy, efficiency, and convenience, adverted to in Re Baudouine, 101 Fed. 576, p. 577, 41 C. C. A. 318, I have felt that the law ought to be such that this court should be vested with jurisdiction of such a suit as this. However, it is the province of this court to declare, not what the law ought to be, but what it is, as it is laid down by legislative and judicial authority. As concerns a judge, at least, neither learning nor lapse of time has sufficed to weaken Aristotle's benign admonition:

"To seek to be wiser than the laws is the very thing which is by good laws forbidden."

[3] Complainant, in support of the claim that this court has jurisdiction, cites In re Crystal Springs Co. (D. C.) 96 Fed. 945; Skillin v. Magnus (D. C.) 162 Fed. 689; In re Baudouine, supra; Murphy v. Hoffman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; and 7 Corpus Juris, 9, 255. It will be noticed that each one of these cases was decided previously to the comprehensive and controlling decision of the United States Supreme Court in Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, except Skillin v. Magnus, supra, in which Judge Hough of the District Court expressly stated that he was required to follow the ruling of the Circuit Court of Appeals in the Baudouine Case. The Bardes Case holds

substantially that clause 7 of section 2 of the Bankruptcy Act is limited in its effect by the controlling language of section 23b, and that, differentiated in that respect from the Bankruptcy Act of March 2, 1867, c. 176, 14 Stat. 517, except with the consent of a proposed defendant, a court of the United States has no jurisdiction to entertain a plenary suit prosecuted by the trustee, save in those instances where the bankrupt itself might have brought such suit in such court, if proceedings in bankruptcy had not been instituted. Complainant's counsel meet this situation by asserting that this is a suit brought on the equity side of the court, and therefore was not the sort or kind of a suit which the bankrupt itself could have brought as for a recovery of these unpaid subscriptions. In other words, the bankrupt would have been limited to a suit at law as against such individual delinquent subscribers, and for that reason jurisdiction of this suit in equity is not denied to the courts of the United States under section 23b, but is expressly conferred on those courts through the medium, and because of the comprehensive language of clause 7 of section 2 of the Bankruptcy Act.

I confess that at first blush I was attracted by this suggestion, but upon more mature consideration I am persuaded that it will not bear analysis. The idea seems to have been engendered in the language of the court in the Crystal Springs Case, supra, where it was said:

"Some suggestions have been made as to where suits should be brought on failure to comply with the call. According to Patterson v. Lynde, 106 U. S. 519 [1 Sup. Ct. 432, 27 L. Ed. 265], there should be one suit in equity for adjustment of the whole matter as to all within the jurisdiction. This is not such a suit as the bankrupt could have brought. Scovill v. Thayer, 105 U. S. 143 [26 L. Ed. 968]. Therefore it is not within sections 23a and 23b of the Bankrupt Act, limiting actions by the trustee to where the bankrupt could sue."

Scovill v. Thayer does not, however, go to the extent claimed for it in the contention made. It was decided in that case, not that a suit in equity was a suit which the bankrupt could not bring, but that, because of the fact that there was an agreement between the bankrupt corporation and its stockholders that there should be no liability as against the stockholders and in favor of the corporation as for unpaid subscriptions, in that particular instance, it would have been impossible for the bankrupt itself to have brought suit against the stockholders as for any such unpaid subscription. Such a situation does not exist in the present case. On the contrary, as I read the language of the complaint, and taking, as I conceive I may, judicial notice of the contents of the petition upon which the order to sue was based, there were positive agreements entered into by each of the stockholders in the case at bar with the corporation that the balances of the unpaid subscriptions should be paid at specified dates. Scovill v. Thayer, then, upon the facts, is not similar to, or authority for the proposition asserted in, this case.

In addition, in the Bardes Case the point was sought to be made (178 U. S. 537, 20 Sup. Ct. 1000, 44 L. Ed. 1175) that the federal court had jurisdiction there because, it being a suit to set aside a conveyance made in fraud of his creditors by the bankrupt, the bankrupt himself

could not have brought such a suit to set aside his conveyance volun-tarily made, and that, in consequence, in virtue of the language of section 23b, the trustee was authorized to bring the suit in the federal court. In answer to this contention and in denial of the jurisdiction of the federal court, the Supreme Court said:

"But the clause concerns the jurisdiction only, and not the merits, of a case; the forum in which a case may be tried, and not the way in which it must be decided; the right to decide the case, and not the principles which must govern the decision. The bankrupt himself could have brought a suit to recover property, which he claimed as his own, against one asserting an adverse title in it; and the incapacity of the bankrupt to set aside his own fraudulent conveyance is a matter affecting the merits of such an action, and not the jurisdiction of the court to entertain and determine it."

So in this case. While it may be true that the bankrupt corporation could not have sued in equity as for the recovery of these unpaid balances, it could, admittedly, and if bankruptcy had not intervened it probably would, have sued at law to effect their recovery. The mere form in which this action is cast, assuming such form to have been either permissive or obligatory, is not, in my judgment, under the limitations prescribed in the Bardes Case, determinative of the jurisdiction of this court. The statute says that the trustee shall sue only "where the bankrupt * * * might have" sued had no bankruptcy proceedings been instituted. There is no implication to be drawn from this language that the trustee, if he sues in equity, may sue in a different court than the bankrupt, who could have sued only at law, might have employed. Under the inhibition of the statute, jurisdiction is determined by a consideration of the question as to the court where the bankrupt might have sued, not as to the form of action in which the bankrupt might have clothed its suit. So, paraphrasing the language of the court in the Bardes Case, just quoted, the clause is determinative of "the forum in which a cause may be tried," and not the form of action in which it might be brought.

I conclude therefore that the bankrupt, having no right to bring such a suit as this in this court, in any form of action, the jurisdictional essentials of this court not existing, the trustee is not authorized to bring the suit in this court merely because he clothes his action in a form not open to the bankrupt itself. The reasoning of the Bardes Case is to the effect that Congress intended, ex industria, to limit the jurisdiction of this court to controversies strictly and properly part of the proceedings in bankruptcy, and to deny jurisdiction, except upon consent, in independent suits. Mueller v. Nugent, 184 U. S. 1, 16, 22 Sup. Ct. 269, 46 L. Ed. 405. This intention of Congress, all-controlling in the premises, must not be laid out of consideration.

In re Newfoundland Syndicate (D. C.) 196 Fed. 443, cited in Corpus Juris, supra, and relied upon by the complainant herein as supporting the claim of jurisdiction of this court, expressly holds, as I read the case, that though the bankruptcy court would have complete jurisdiction to consider and determine with respect to the necessity for a call upon the stockholders for their unpaid subscriptions in aid of a liquidation of the debts of the bankrupt corporation, yet (page 447) "the enforcement of said assessment against the stockholders alleged to be lia-

ble thereto, however, is plenary in its nature, and, except with their consent, cannot be made in the bankruptcy court. Section 23b, Bankruptcy Act. In the suit to collect such assessment, the defendant is entitled to make all defenses that relate to him in his individual as distinguished from his corporate capacity, such as that he is not a stockholder, or that he has fully paid for the stock taken." This statement seems to be supported by cases cited, and is in consonance with my own view that the proceeding as against the individual stockholder upon his refusal to pay his delinquent subscription is not a mere proceeding in bankruptcy for the collection of the assets of the estate, but a suit plenary in its nature and subject to all the limitations expressed in section 23b of the Bankruptcy Act. These conclusions seem to find support in some of the text-books, viz. Collier on Bankruptcy, p. 489; Remington on Bankruptcy, § 1694, and also section 977. See also Clevenger v. Moore, 71 N. J. Law, 148, 58 Atl. 88, p. 89, where the precise point seems to have been passed upon adversely to complainant's contention herein by the Supreme Court of New Jersey.

[4] Upon the whole case, it may be said that I am not entirely free from doubt as to the question of the jurisdiction of this court. Aside from the reasons given and the authorities cited hereinabove, in the presence of such a doubt, and owing to the limited jurisdiction of this court, I should feel ordinarily that, unless its jurisdiction were shown to exist, jurisdiction should be denied. It occurs to me as not improper, however, to give the complainant in such case the benefit of such doubt in substantial fashion. The question of jurisdiction can be determined in advance of a long and perhaps expensive trial on the merits. By taking up merely one record, upon one motion, by an abbreviated record, economy both of time and of expense can be effected. Imbued with this thought, the court will therefore grant the motion to dismiss as against the complainant and in favor of one of the defendants herein and withhold a ruling upon the other motions, say, 60 days. If within that time appropriate means are taken to obtain a review of this order, a further stay will be granted until the question has been determined on appeal. If, however, at the end of such period no steps have been taken to seek such review, or within that period complainant signifies an intention not to appeal from the order now made, an appropriate order will then be entered granting each and all of the motions to dismiss.

The motion of Thomas Gill, one of the defendants, to dismiss, is granted, upon the sole ground that this court is without jurisdiction to entertain the suit. A ruling upon all other motions made by other defendants, upon various grounds enumerated, will be held in abeyance for 60 days pursuant to the suggestion hereinabove made.