Jacob Ark, J.
This is a motion by the defendant to dismiss the eight causes of action alleged in the complaint on the ground that no cause of action is stated. The plaintiffs have moved for an order to compel the defendant to answer. The parties agreed upon an established principle of law, that on a motion to dismiss the complaint on the ground that no cause of action is stated, •the allegations in the complaint are assumed to be true (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 458).
The plaintiffs are husband and wife, who commenced this action on behalf of themselves and their five unemancipated children and an emancipated child. The defendant is the owner of a single dwelling at 125 George Street, Rochester, New York, occupied by the plaintiffs on an oral month-to-month tenancy. The property is in violation of the Building Code of the City of Rochester.
*680 The first cause of action is designated as an intentional tort of ‘ ‘ slumlordism ’ ’ which the plaintiffs state does not fall in any previously defined tort categories, but should be “ a means by which a human being who has been the victim of injuries, outrages and indignities may receive through acceptable’ legal channels redress in the form of monetary damages.”
The second cause of action is based upon tortious breach of landlord-tenant contract — nonfeasance, and demands judgment for all rent paid over a period of approximately six years of tenancy. The third cause of action alleges tortious breach of landlord-tenant contract — misfeasance, and seeks damages for malicious and intentional exploitation and oppression. The fourth and fifth causes of action are for the tortious breach of statutory duties (a) nonfeasance, and (b) misfeasance. The sixth cause of action is for the tort of intentional infliction of emotional distress. The seventh cause of action is for the tort of nuisance and seeks a preliminary and permanent injunction against the defendant for failing to correct the City Code violations and abatement of the nuisance. The eighth cause of action is founded upon a prima facie tort.
In addition to the forms of relief mentioned, the plaintiffs demand remedial, compensatory, exemplary and punitive damages in varying amounts for physical injuries caused to some of the plaintiffs and the serious emotional and physiological distress caused to all of them by the defendant.
The plaintiffs, who are the recipients of public assistance by reason of the plaintiff Eugene Golden’s total disability, resided at these premises from 1960 to November, 1963, when they were directed to move by a Monroe County Social Service caseworker as the ‘1 premises were not even minimally fit for human habitation ”. They moved back to this structure in October, 1967 and were residing there at the time this action was instituted. They allege that they are limited to this type of premises by reason of the small amount of public assistance they receive and the acute shortage of low income housing in Monroe County.
The complaint recites a history of serious violations of the Rochester Property and Rehabilitation Code by the defendant, commencing with the year 1957, in support of the allegations that the property has been condemned by the City of Rochester.
The opprobrium associated with the ownership of the type of property depicted in the complaint is of little, if any, comfort to the plaintiffs, who urge that the court give sanction to a cause of action admittedly forged to make a “ slumlord ” respond in damages to poverty-stricken occupants of his property who suf *681 fered emotional stress and physiological injury by reason of their tenancies.
The plaintiffs ’ cause of action for1 ‘ slumlordism ’ ’ is patterned after an article reported in 65 Michigan Law Review 869 (March, 1967) entitled, “ Slumlordism as a Tort ”, to which a dissenting view appears in 66 Michigan Law Review 451 (January, 1968) with a response on page 465 of the same volume.
Most of the authorities cited in the plaintiffs ’ exhaustive memorandum of law (102 pages) were not decided by the courts of this State and were based upon the statutory enactments or the case law of f oreign jurisdictions. The many authorities set forth by the plaintiffs have been examined and it would serve no useful purpose to catalogue in this decision the manner in which they are distinguishable from the factual situation alleged in the complaint and the law of this jurisdiction applicable to the jural relationship of the parties.
Plaintiffs rely upon Altz v. Lieberson (233 N. Y. 16 [1922]) in which the court held that the former Tenement House Law (now Multiple Dwelling Law and Multiple Residence Law) altered the common-law rule that a landlord, in the absence of an express covenant, was not obligated to repair. It was this statutory change that subjected the landlord to liability in tort. This was pointed out in Cullings v. Goetz (256 N. Y. 287 [1931]), where the court said on page 292: ‘ ‘ Liability has been enlarged by statute where an apartment in a tenement house in a city of the first class is the subject of a lease (Altz v. Lieberson, 233 N. Y. 16).”
Cullings v. Goetz (supra) was an action against the lessee and owners of a building for personal injuries when a defective garage door fell on the plaintiff. The lease was an oral one and ran from month to month. The court held that the failure of the owners to keep the promise to repair did not make them liable in tort, as such liability was confined to the lessee. ‘ ‘ The doctrine, wise or unwise in its origin, has worked itself by common acquiescence into the tissues of our law. It is too deeply imbedded to be superseded or ignored. # * * (p. 291) Countless tenants, suing for personal injuries and proving nothing more than the breach of an agreement, have been dismissed without a remedy. * * * If there is no remedy for the tenant, there is none for visitors or relatives present in the tenant’s right.” (p. 292).
This authority was cited in People v. Scott (26 N Y 2d 286, 290 [1970]), where the court held: “Requiring that the lessor retain control over the leased premises before he may be held responsible for matters with respect to it is not novel in this *682 court. In negligence cases arising from a defective condition on demised property, liability will not attach when the landlord has surrendered control (see, e.g., Roark v. Hunting, 24 N Y 2d 470; Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422). The reservation of the right of entry to make repairs without a concomitant covenant to do so will not permit a finding of sufficient control to hold the landlord (Dick v. Sunbright Steam Laundry Corp., supra; Appel v. Muller, 262 N. Y. 278; Cullings v. Goetz, 256 N. Y. 287). Similarly, the covenant alone will not give rise to the owner’s liability (Lafredo v. Bush Term. Co., 261 N. Y. 323). The owner has been held only when the facts justify a conclusion that control has been retained in fact (De Clara v. Barber S. S. Lines, 309 N. Y. 620; Noble v. Marx, 298 N. Y. 106; Scudero v. Campbell, 288 N. Y. 328). These cases demonstrate a reluctance to find that the landlord has retained control for the purpose of declaring him a tort-feasor.”
The Legislature, by enacting the Multiple Dwelling Law and the Multiple Residence Law, has provided standards for sufficient light, ventilation and sanitary facilities to safeguard the health of the occupants of multiple dwellings, but it has made no similar provisions for single residences. The Legislature has recognized that there is exploitation of tenants by the failure, of certain landlords to make repairs and provide necessary services. Nevertheless, it has not enacted a statute that changed the long standing legal relationship between the landlord and tenant as to single dwellings, except in a few isolated instances where a general statute has been passed that is applicable to all housing accommodations. By the Laws of 1962, chapter 997 (Social Services Law, § 143-b), the Spiegel Law was enacted whereby a public official may withhold the payment of rent on behalf of a welfare tenant where there exists a violation in the building in which the welfare recipient resides. It was based upon these legislative findings: ‘ ‘ The legislature hereby finds and declares that certain evils and abuses exist which have caused many tenants, who are welfare recipients, to suffer untold hardships, deprivation of services and deterioration of housing facilities because certain landlords have been exploiting such tenants by failing to make necessary repairs and by neglecting to afford necessary services in violation of the laws of the state.”
By the Laws of 1970, chapter 338, the Public Health Law was amended by adding section 1370 to 1376 to meet the problem of lead poisoning. The Legislature findings upon which this enactment was made read in part as follows: “ Many thousands of children in the cities of our state are actual or potential victims *683 of lead poisoning. The disease of lead poisoning is most prevalent in areas of old and deteriorating housing where leaded paint and plaster in a peeling condition is accessible for ingestion by young children. ’ ’
Other legislative enactments that deal with the responsibility of owners of single dwellings are contained in the ordinances adopted by the City of Rochester. The Building Code (§ 38.14). Nuisances. 1 ‘ All unusable habitations are hereby declared to be nuisances and shall be vacated, repaired or demolished to the end that such nuisances shall be abated. All persons now or hereafter living in an unusable habitation shall vacate the same and the owner shall repair the same or demolish it.”
Building Code (§ 38.15). Responsibility for occupation. “ It shall be unlawful for any person controlling, renting or managing either as owner, agent or otherwise, any unusable habitation in the City of Rochester, to permit the same or any part thereof to be used or occupied as a place of human habitation. It shall be unlawful for any person to occupy as a place of human habitation any unusable habitation.”
The city ordinance has the force of law. The difficulty with the plaintiffs ’ position, however, is that it places a responsibility upon them at least equal to that of the landlord. It directs that they vacate the premises and their occupation of the property is unlawful. In the instant case it may be extremely unfair to place this burden upon their shoulders, but the enactment which they muster in support of their causes of action puts them in the unenviable position of unlawfully occupying the very structure upon which this lawsuit is bottomed and on premises where they had no right to be under the mandate of the ordinance.
The plaintiffs argue that the defendant for ‘‘ his own economic benefit rented a dwelling that failed even to meet Building Code Standards of decency ” and made as few repairs as possible to ‘ ‘ maximize his profit ’ ’.
“ The key to the prima facie tort is the inflicting of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. * * * The remedy is invoked when the intention to harm, as distinguished from the intention merely to commit the act, is present, has motivated the action, and has caused the injury to plaintiff, all without excuse or justification.” (Ruza v. Ruza, 286 App. Div. 767, 769.) Abhorrent as the defendant’s conduct may have been, it cannot be the basis for a prima facie cause of action.
The plaintiffs occupied the defendant’s premises from 1960 to 1963. With great reluctance they moved back in 1967 when the premises ‘ ‘ were in an even further dilapidated condition than *684 the time the plaintiffs first occupied the premises in 1960-1963 ’ ’.
The Spiegel Law was “ designed to operate as an effective weapon in the fight against slum housing in general ” (Matter of Farrell v. Brew, 19 N Y 2d 486, 490). Disregarding the applicability of that statute to these premises and assuming that the rent paid was grossly excessive, there was the existence of consideration for the rental agreement, which must be distinguished from the question of its value. ‘ ‘ No court or writer has maintained that the validity of a contract depends upon an objective equality of advantage or values. ’ ’ (Matter of Affiliated Coat & Apron Supply Co. [Laundry Workers Joint Bd. ], 153 N. Y. S. 2d 970, 976, affd. without opn. 2 A D 2d 671.)
Chapter 52 of the Code of the City of Rochester provides for enforcement procedures contained in the Building Code and Property, Rehabilitation and Conservation Code, among which is an action for injunctive relief by the head of the city department charged with this enforcement. This remedy is unavailable to the plaintiffs.
Garcia v. Freeland Realty (63 Misc 2d 937) and Amanuensis, Ltd. v. Brown (65 Misc 2d 15), cited by the plaintiffs in support of a principle of implied warranty of habitability, are decisions of the Civil Court of the City of New York which concerned tenants who came under the Multiple Dwelling Law. These are inapposite, as Garcia involved a tenant who sought to be reimbursed by his landlord for materials furnished and labor performed by him in connection with the plastering and painting of two rooms in his apartment, and Amenuensis was a proceeding commenced by the landlord for the nonpayment of rent.
Courts in the decisions of cases have expanded actionable tort liability in a related field, but what the plaintiffs seek in this lawsuit is the approval of an action that would make a drastic change in properly established rules of law contrary to the existing landlord-tenant jural relationship. It is for the Legislature to alter existing law to meet sociological needs of present day urban living'.
It is a matter of common knowledge that in large urban areas many families live in substandard housing and that there is a critical shortage of decent dwelling units. Legislative findings in the enactment of the statutes cited in this decision give solid verification of this national problem which all levels of government have failed to solve. The plaintiffs urge that present day legal principles are “ outdated concepts to the housing problems of the urban poor ”. Assuming arguendo the accuracy of this statement, the primary role of the courts is to decide cases and *685 not create new or substantially change existing legal principles by judicial decision.
The plaintiffs ’ memorandum of law states that the Rochester Center for Governmental and Community Research, Inc., in its report on Housing in Monroe County 1969, reveals that ‘ ‘ in the City of Rochester there are probably over twenty thousand (20,000) deficient housing units ”. In the light of such statistics the Legislature is the only body that can create a cause of action of the nature for which the plaintiffs strive in this proceeding. It would also eliminate the serious, question of retroactivity that a judicial ruling recognizing such an action would encompass.
In Kelley v. Aarons (238 F. 996, affd. 215 U. S. 116) the District Court, in regretting its lack of jurisdiction in the matter at hand, said (at p. 998): “However, it is the province of this court to declare, not what the law ought to be, but what it is, as it is laid down by legislative and judicial authority. As concerns a judge, at least, neither learning nor lapse of time has sufficed to weaken Aristotle’s benign admonition: 1 To seek to be wiser than the laws is the very thing which is by good laws forbidden. ’ ’ ’
Motion to dismiss the complaint is granted.