JOHN MONAGHAN, Appellant, *v.* JOHN F. MAY and Another, Respondents, Impleaded with HARRY L. WEISS and Others, Defendants.

Second Department, July 3, 1934.

*George A. Brooks* [*John J. Conway* and *James C. Healy* with him on the brief], for the appellant.

*Stephen R. J. Roach*, for the respondents.

CARSWELL, J. This is a foreclosure action. The mortgages foreclosed aggregated $24,077.55. Plaintiff bid in the property for a nominal sum of $5,000. Plaintiff moved to confirm the referee's report of sale and for a deficiency judgment of $19,791.71. The referee's report was confirmed, but leave to enter a deficiency judgment was denied.

The Special Term found the value of the mortgaged property in the hands of the plaintiff mortgagee equalled the mortgage debt and completely satisfied it.

The Legislature, by section 1083-a of the Civil Practice Act (Laws of 1933, chap. 794), placed a limitation on deficiency judgments " where the mortgaged property shall be sold during the emergency." The emergency period is fixed in section 1083-b as from August 28, 1933, to July 1, 1934. It has since been extended (Laws of 1934, chap. 277) to July 1, 1935. The property was sold on August 11, 1933, shortly before the beginning of the emergency period as fixed by the statute. The refusal to allow, without the statutory limitation, the entry of a deficiency judgment may not, therefore, be justified by the statute. It must be sustained, if at all, under the inherent power of a court of equity.

The Legislature has declared that an emergency exists, fixed the period thereof, and declared that certain remedies available to mortgagees (*inter alia*, in respect to deficiency judgments) shall be subject to limitations during that period. These enactments " provide procedure and relief which are cognate to the historic exercise of equitable jurisdiction." Equity is not circumscribed by these statutory dates if the emergency in fact had an earlier origin. These enactments do not deprive a court of equity of its inherent power to place limitations upon the remedies available to a mortgagee in consonance with fundamental doctrines of equity. (*Clinton Trust Co.* v. *142–144 Joralemon Street Corp.*, 237 App. Div. 789.) A court of equity may do this during such times as it deems are within the period of economic stress and emergency, which period may be equal to or greater than that fixed by the Legislature.

When the Legislature spoke, mortgagors and mortgagees learned, earlier than they would have if left to the results of invoking judicial power, that continued abnormal economic conditions would not

be permitted to unjustly oppress the borrower. But the judicial power to effect the same result has always been and still is there, responsive to a proper case for its exercise — apart from the statutory declarations.

In early common-law days the theory obtained that title to the land involved in a loan or " dead pledge " vested in the mortgagee. Courts of chancery developed the doctrine that a mortgagor had an equity of redemption of which he could not be deprived except by means of a foreclosure thereof in a proceeding *in rem* in chancery. In such a proceeding the chancery court did not ordinarily have power to enter judgment *in personam* against the mortgagor for any part of the mortgage debt. The mortgagee could obtain such relief only in an action in a common-law court on the bond or covenant of the mortgagor. The theory which obtained in this State — the methods of modification resulting in it not being important — was that the title to land continued in the mortgagor and was subject to the lien of the mortgage in favor of the mortgagee or lender. Separate remedies at law and in equity continued — one at law on the debt, the other in equity to subject the property to payment of the debt. (*Dunkley* v. *Van Buren*, 3 Johns. Ch. 330, per Chancellor KENT; 3 Jones Mort. [8th ed.] § 2210.) At an early date legislation was had (2 N. Y. R. S. 191) which enabled the lender, in the event of a default by the borrower, to get relief in a single action, *in personam* as well as *in rem*. Such legislation gave to a court of equity, in this particular, power formerly lodged in a court of law. This enabled a court of equity to foreclose the mortgage and, in the event the land subject to the lien was insufficient to satisfy the mortgage debt, to grant a judgment *in personam* for the balance of the debt or the deficiency. This empowering of a court of equity to do that which inherently it could not do finds present expression in section 1083 of the Civil Practice Act. It is there provided: " the final judgment *may* award payment by him [mortgagor] of the residue of the debt remaining unsatisfied, after a sale of the mortgaged property, and the application of the proceeds, pursuant to the directions contained therein." The statute says " may," not " must." The granting of this relief is not mandatory on a court of equity.

In exercising its statutory jurisdiction, a court of equity will be guided by equitable principles. To obtain a deficiency judgment and determine the amount thereof, it is necessary to invoke equitable power to confirm the sale had under the judgment of foreclosure. When seeking affirmative judicial action in equity, one may not succeed if one is asking an inequitable or unconscionable result. Equity may refuse to confirm such a sale where it has produced

an inadequate price. (*Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 446.) There Chief Justice HUGHES said: " In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience." Here the court, therefore, might have refused to confirm the report of sale and ordered a resale. It concluded, however, to confirm, even though the price paid by the plaintiff was inadequate. It recognized that ordering a resale under existing conditions would not result in any practical benefit or be productive of the full or fair value of the premises sold.

The court found that the mortgagee was the purchaser at a price that was so inadequate as to shock the conscience of the court. It concluded to treat the price as merely nominal and to confirm the report in view of its further finding that the true value of the property in plaintiff's hands was equal to the amount of the mortgage debt. This made it equitable to confirm the report of sale, since the property vested in the mortgagee and fully satisfied the mortgage debt. This procedure constituted the mortgage debt as the real price on the sale. The court having the power to refuse to confirm the report of sale because the price was inadequate, it likewise had the kindred power to refuse to authorize the entry of a deficiency judgment based on such a sale and computed on such an inadequate or nominal price base. The court thus merely declined to exercise its statutory jurisdiction except where its powers in this regard are invoked to do equity. If the property did not equal in value the mortgage debt, then equity would require the granting of a deficiency judgment; but that is not this case.

The fact that plaintiff had a judgment of foreclosure which provided for the entry of a deficiency judgment does not disable a court of equity from refusing to accord a deficiency judgment when, later on after a sale has been had, it appears inequitable so to do. A decree for a deficiency does not have the effect of a judgment at law until the deficiency is ascertained. (3 Jones Mort. [8th ed.] § 2220.) Until that is ascertained it does not become a lien. (*Mutual Life Ins. Co.* v. *Hopper*, 43 N. J. Eq. 387; *Mutual Life Ins. Co.* v. *Southard*, 25 id. 337.) No rights vest, perforce the judgment of foreclosure, in plaintiff for a deficiency judgment in any amount until plaintiff satisfies a court of equity that it would be equitable and just, as a consequence of what has occurred on the sale, to authorize the entry of a deficiency judgment. When the application therefor is made, the sufficiency of the sale price may be determined and also whether equitably it may be utilized as a base from which to compute a deficiency judgment.

However, the statute which denies a deficiency judgment except under certain limitations (Civ. Prac. Act, § 1083-a) does so only in respect of the mortgage debt. Equity may very properly conform to the policy of the statute in this particular. Here the Special Term confined its finding to the proposition that the property satisfied " the mortgage debt." It did not find that the property satisfied the mortgage debt and the costs of the action. The defendants could have avoided the need for plaintiff to incur the expense of an action with its consequent costs. Defendants not having done so, the bringing of the action by plaintiff was made necessary and plaintiff became equitably entitled to the costs because of defendants' attitude. Therefore, in the absence of a finding by the Special Term that the property was of a value great enough to discharge both the mortgage debt and the costs, the plaintiff is equitably entitled to the amount of the costs in the form of a deficiency judgment.

The order in so far as appealed from should be modified so as to provide that a deficiency judgment in the sum of $445.75 be awarded to plaintiff, and as thus modified affirmed, without costs.

LAZANSKY, P. J., KAPPER, HAGARTY and TOMPKINS, JJ., concur.

Order in so far as appealed from modified so as to provide that a deficiency judgment in the sum of $445.75 be awarded to plaintiff, and as thus modified affirmed, without costs.