## Commercial Building Association v. Steen et ux.

*Oscar B. Friedman*, for petitioners.

*Henry D. O'Connor*, contra.

KUN, J., November 1, 1935.—Judgment was entered on December 13, 1934, on a bond accompanying a mortgage for $3,000 (being a second mortgage) on premises 968 Wagner Avenue, dated November 16, 1925, the bond and mortgage having been executed by the defendants, Raymond A. Steen and Margaret A. Steen, to the plaintiff, Commercial Building Association.

The bond was entered by reason of defaults in payment of dues, interest and premium on the mortgage and damages were assessed in the sum of $1,965.44 on December 19, 1934. Thereafter, on May 13, 1935, a fi. fa. was issued and bills were posted to sell personal property of the defendants, situate at 968 Wagner Avenue, on July 11, 1935.

Defendants filed a petition under the Act of July 1, 1935, P. L. 503, to stay the sale. The plaintiff association, by its answer, has raised the question of the constitutionality of the act, and arguendo makes the point that in any event it is inapplicable to the case before us. The act is stated to be an emergency measure under the police power of the Commonwealth, and by its terms (section 11) it is to be construed to be a continuation of the provisions of the Act of January 17, 1934, P. L. 243.

The question before us arises under section 1 of the Act of 1935, which reads as follows:

"Be it enacted, &c., That in all cases where a bond and mortgage, or any other obligation securing or guaranteeing the payment thereof, is or has been given for the same debt, the real property, bound by such bond and mortgage, shall first be proceeded against and sold on execution, and the amount of the deficiency judgment ascertained, as hereinafter provided, before any other real property of the mortgage debtor may be attached, levied on or sold for the debt secured by such bond and mortgage, and before any property, real or personal, of any such other person may be sold for the debt secured by such bond and mortgage."

The case can well be disposed of on the casual point made by the plaintiff, because it nowhere appears in the section quoted that there is any inhibition against any levy and sale of the personal property of the mortgage debtor. Such property is not within the protection of the statute. What the statute provides is that "where a bond and mortgage . . . is or has been given for the same debt, the real property, bound by such bond and mortgage, shall first be proceeded against and sold on execution, and the amount of the deficiency judgment ascertained, as [hereinafter] provided, before any other real property of the mortgage debtor may be . . . sold for the debt secured by such bond and mortgage". As is observed, there is nothing whatever said about the sale of any personal property of the mortgage debtor, so that it

appears quite clear to us that the holder of a bond accompanying a mortgage, having entered judgment thereon, may levy execution on any personal property of the obligor, and sell it. The only mention of personal property in the quoted section is in the clause immediately following the last quoted portion which reads, ". . . and before any property, real or personal, of any such other person may be sold for the debt secured by such bond and mortgage." While no antecedent "person" is mentioned in this section to which the words "such other person" can refer, they can be related back to the clause "or any other obligation securing or guaranteeing the payment thereof" (the bond and mortgage previously mentioned), to give it meaning. This section of the act is very poorly drawn. It speaks of "a bond and mortgage" as though the two were one instrument, and the error is continued by the use of the singular verb "is or has been" given for the same debt. Then it speaks of the real property "bound by such bond and mortgage". Ordinarily a bond does not bind any particular property. The bond is the general obligation to repay the money borrowed. The mortgage is the conveyance as security of the property described, to secure the payment of the bond. At the beginning of the section, the provision is "where a bond and [a] mortgage" have been given "for the same debt", and these words are followed by the clause "or any other obligation securing or guaranteeing the payment thereof". This last clause can have reference only to some collateral undertaking given by some person other than the mortgage debtor, and it is such "other person" to whom the clause at the end of the section must be held to apply if it is to be given any effect. That is to say, the real property bound by the primary mortgage debtor's obligation, must be first proceeded against, and the amount of any deficiency judgment ascertained, before "any property, real or personal, of any such other person [a third party who has given "any other obligation securing or guar-

anteeing" the payment of the primary bond and mortgage], may be sold.

In the case before us plaintiff is not seeking to sell any personal property of "such other person", that is to say, of anyone who has given a collateral undertaking, but is seeking to sell the personal property of the mortgage debtors themselves. The statute does not prohibit or suspend the sale of any such personal property of the primary mortgage debtor. We are advised that in the first draft of the act there was a reference to the personal property of the mortgage debtor giving it the same protection but this was stricken out before the final passage of the act. Whether this is so or not, the court has no power to write into the statute the words "personal property" when it in plain terms relates to the sale of real property only, so far as the mortgage debtor is concerned. The effect of the statute as drawn, so far as it relates to the sale of personal property, is this: personal property of the primary mortgage debtor may be sold on a judgment entered on his bond accompanying the mortgage, as heretofore, without any right to any stay of execution; personal property of a third party who has merely given some "other obligation securing or guaranteeing the payment . . . for the same debt", cannot be sold until after the sale of the real property bound by the primary mortgage and until after a deficiency judgment against the mortgage debtor has been ascertained as provided in the act.

We have indicated to counsel, that this construction of the statute, requiring as it does the discharge of defendants' rule for stay of execution so far as the sale of their personal property is concerned, makes it unnecessary to pass on the constitutionality of the act. However, the question has been so well argued in the briefs submitted that it may be advisable to express our views on the subject, in view of the fact that so many proceedings have been instituted thereunder, and many more are likely to be.

The attack on the constitutionality of the act is made

on the broad ground that it impairs the obligation of contracts between mortgagors and mortgagees and that it in some way deprives mortgagees of vested rights. We have been unable to find anything in the act, however, which impairs the obligation of any contract, or deprives a mortgagee of any vested right. The recorded mortgage still binds the property described therein and any judgment entered on the accompanying bond becomes a lien upon all other real property of the obligor. The purpose which the act seeks to accomplish is to regulate the proceedings instituted for the collection of the debt secured, so that in the emergency stated in the statute to exist, and this may be said to be a matter of common knowledge, considering the great limitation on the ability to borrow money from the banks for mortgage loans or other purposes, and the general dearth of such funds, mortgage debtors shall not be made to suffer unduly and lose valuable properties because of their inability for the time being to secure funds. Another thought underlying the legislation is that in the emergency referred to, and for the reasons stated, the purchasing ability of persons who otherwise would be willing buyers at sheriff's sales is greatly limited, so that in the absence of such a statute mortgagees could buy in for nominal amounts the mortgaged properties, with the legal right left to proceed against the mortgage debtors for almost the full amount of the debt. This would obviously result in the unjust enrichment of mortgagees at the expense of helpless mortgagors.

This brings us to a consideration of section 2 of the act. It is likewise poorly drawn. In terms it requires the plaintiff in foreclosure proceedings, within six months after the sale, to proceed as therein provided, to obtain a deficiency judgment based on a finding of the "fair" value of the property sold, and regardless of who may have been the purchaser at the sale. The section predicates its provisions on its introductory words "whenever any real property is sold, etc." If the section would be made

applicable without distinction whether the sale be to the mortgagee or to a third party and would be held to be incapable of dissection so that it could be held to apply in the one instance, and not in the other, we would follow the ruling made by the Court of Errors and Appeals of New Jersey in such a situation and hold the section unconstitutional, as was done in Vanderbilt v. Brunton Piano Co. et al., 111 N. J. L. 596, followed in Sayre et al. v. Duffy, 179 Atl. 459 (Supreme Court of N. J.), although we would not follow the court's reasoning on the main question. To give the statute before us effect we would hold that it applies only where the mortgagee has bought the property in at the sale, and that it does not apply if the property has been bought in by a third person.

In normal times and under normal conditions it is assumed that at a sheriff's sale the property will bring a fair market value, and therefore the amount paid thereon is held to be a fair credit on the mortgagee's loan. However, it was considered by the legislature that sheriff's sale prices during the emergency do not represent fair values of the properties sold, so that the purpose of the act is to provide that if the mortgagee purchases the real property bound by the mortgage, then before a deficiency judgment may be entered against the mortgagor, the "fair value" of the property (as distinguished from the inadequate (in the emergency) market value) is to be ascertained and the amount thereof credited on the debt due, and a deficiency judgment entered for the difference, if any, before other property of the mortgage debtor or property of a collateral surety may be sold.

The stated purpose of this legislation was adopted with approval in Evans v. Provident Trust Co., 319 Pa. 50, 52, from the opinion of the court below as follows: ". . . to assure in the interest of a defendant mortgagor, a credit on the judgment according to the fair value of the property bought in by the mortgagee, regardless of the amount bid, very often, a nominal amount." There was no suggestion there that it went beyond legislative

power, although the Act of 1934 there under consideration was held not to preclude a creditor who had several securities for his debt from proceeding against any of them until his debt was paid, as the act did not apply to such a case. As stated in that decision, the Act of 1934 affected the rights of the parties after a sale on foreclosure proceedings. The Act of 1935, however, now under consideration, is somewhat of an advance on the Act of 1934, directing that, in case of default, the real property bound by the mortgage must first be sold and a deficiency judgment as therein provided obtained, before other real property of the mortgagor may be sold. We do not understand how this statutory direction for the mere order in which the debtor's property shall be taken in execution can be held to be any impairment of the obligation of the contract involved. The mortgagee may proceed on default at once to collect his debt, following the procedure outlined in the act. There is no vested right in any mortgagee to take the mortgagor's property and not credit the fair value thereof on account of the debt. All that the statute seeks to accomplish is to assure a just credit to the mortgage debtor, as stated in Evans v. Provident Trust Co., supra. The obligation of the contract to pay is in no way impaired. The mortgagee may still collect his full debt, and under the statute his right to do so is not even suspended or deferred. No moratorium is granted to mortgage debtors although the legislature could, on ample authority, have granted it in the emergency for a reasonable period. The statute merely regulates the remedies given to enforce the obligation involved, and it in no sense impairs the obligation of the contract. It is, therefore, a valid exercise of legislative authority: Sturges v. Crowninshield, 4 Wheat. 122; West Arch B. & L. Assn. v. Nichols, 303 Pa. 434.

Though this type of legislation has been loosely referred to as a moratorium, it really is not that. A moratorium is a suspension or delay granted by lawful authority, during an emergency, for the payment of legal obli-

gations. As we have pointed out, this legislation does not suspend or even delay payment of the obligation. It merely introduces an equitable consideration in the procedure of foreclosure on mortgages, requiring a mortgagee purchaser (as the act must be construed) to give a true credit on account of the debt, based on the fair value of the security bought in by him, before he may proceed against any other property of the debtor for the balance. The introduction of this equitable consideration is required as pointed out during the emergency for the reasons hereinbefore discussed.

It is interesting to note that in Monaghan v. May et al., 273 N. Y. Supp. 475 (modified on reargument in 274 N. Y. Supp. 243), the court asserted the right to control a deficiency judgment on foreclosure of a mortgage, regardless of the statute in question, as an inherent power in equity to prevent an unconscionable result which would follow if the mortgagee bought the property in at a nominal sum, and were permitted to proceed to collect the debt on a deficiency judgment. The court held that the fair value of the property bought in by the mortgagee in that case was at least equal to the mortgage debt and he was not entitled to a deficiency judgment. Whether our courts would go so far in the absence of the statute is not necessary to discuss, but we are clear in the view that, the legislature having directed that this equitable consideration be given to mortgagors, it had the lawful authority to do so.

Conflicting views have been expressed as to the constitutionality of this type of legislation, the majority of jurisdictions having sustained the legislation. In some States where the legislation has been held unconstitutional, the reason advanced was that it was not emergency legislation, because it was not limited in duration to the alleged emergency.

We do not deem it necessary to discuss all these cases. We are well satisfied that our statute, limited as it is to the duration of the emergency stated therein to exist,

which we believe is based on actuality, and not operating to impair any obligation of contract, but regulatory merely of foreclosure proceedings, in the circumstances fully discussed herein, is a perfectly valid exercise of legislative authority, and that no constitutional right or inhibition is invaded thereby.

The procedure and relief provided by the statute are "cognate to the historic exercise of equitable jurisdiction in cases of mortgage foreclosure" quite as much as the statutory extension of the period for the exercise of the equity of redemption (passed in Minnesota) which was upheld as constitutional in Home B. & L. Assn. v. Blaisdell et al., 290 U. S. 398, 446. (The quotation is from the syllabus at page 402.) All that was said in that case in support of the constitutionality of that legislation can be said in support of the statute here.

If a two-year extension for the right to redeem foreclosed property is constitutional during an emergency of financial distress when the owners cannot readily obtain funds for redemption, certainly a requirement that a credit of the true or fair value of the mortgaged property, when bought in by the mortgagee, must be granted during a similar emergency, before other property of the mortgage debtor may be sold, is a constitutional exercise of legislative power. If anything, the legislation in the Blaisdell case was considerably more in the direction of an impairment of the contract, though not held to be such an impairment, than the statute under consideration, which does not, in our opinion, in any sense affect the obligation of the contract, properly understood, but directs merely, as we have stated, the order in which the mortgage debtor's property is to be sold, and is designed to assure him a fair credit based on the fair value of the security (the mortgaged property) if bought in by the mortgagee creditor, leaving him as heretofore in the full and unrestricted position to proceed against any and all other property of the debtor, for the balance. It is to be noted that the requirement to fix the fair value

for credit is limited to the mortgaged premises and does not apply to the subsequent sale of any other property of the mortgage debtor on the deficiency judgment.

The legislation, though it could have been more artfully drawn, is fair and reasonable, and introduces an equitable consideration in foreclosure proceedings in the present emergency.

In our view of the nature and character of the legislation under consideration, we do not deem it necessary to draw support from the so-called "rent cases" arising during the World War, the gold clause cases, Norman v. Baltimore & Ohio R. R. Co., 294 U. S. 240, Block v. Hirsh, 256 U. S. 135, and such other cases, in which impairments of contractual obligations were permitted.

As we have stated, we do not consider the statute under consideration as in any way impairing the obligation of the contract between the mortgagor and the mortgagee, but if it can be considered in any sense as a slight impairment in the way of affecting in a small degree the remedy given to the mortgagee creditor, though we do not concede that it does, ample authority therefor may be found in the cases just cited, in which the legislation affecting the contracts went very much further than the statute now under consideration.

Though it may be somewhat beyond the necessity of the case to do so, considering the limited nature of the legislation now under consideration, we nevertheless conclude this opinion with a quotation from the opinion of Chief Justice Hughes in the Blaisdell case, as indicating the modern legal attitude towards the general question of so-called impairment of the obligation of contracts. The chief justice said on page 439:

"And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes.

"Whatever doubt there may have been that the protective power of the State, its police power, may be exercised—without violating the true intent of the provision of the Federal Constitution—in directly preventing the immediate and literal enforcement of contractual obligations, by a temporary and conditional restraint, where vital public interests would otherwise suffer, was removed by our decisions relating to the enforcement of provisions of leases during a period of scarcity of housing", citing Block v. Hirsh, supra.

We hold the Act of July 1, 1935, P. L. 503, constitutional. However, we discharge defendants' rule for stay of execution for the reason stated in the first part of this opinion. The act does not protect the personal property of the mortgagor defendants from sale under the judgment entered on their bond. So far as the primary mortgage debtors are concerned, the act relates only to their real property. With the wisdom of this limitation, we are not concerned. We must construe the act as it was passed by the legislature.