GUARANTEED TITLE AND MORTGAGE COMPANY, Appellant, *v.* CHARLES SCHEFFRES and Others, Defendants, Impleaded with ANNA M. ENGELKING and ADELAIDE POWELL, Respondents. (Appeal No. 1.)

Second Department, February 14, 1936.

*Isidore Ginsberg,* for the appellant.

*Edward J. Hogarty* [*Brent W. Blythe* and *Elmer E. Wigg* with him on the brief], for the respondents.

PER CURIAM. On reargument, orders reversed on the law, with ten dollars costs and disbursements, and the motions denied, with leave, if defendants be so advised, to move to vacate the judgment of foreclosure and sale so as to provide for the entry of a judgment that does not authorize a deficiency judgment in advance of an application therefor based on the report of sale. The court may not assume to exercise its inherent power to deny the entry of a deficiency judgment, assuming it has the power, while the judgment directing the entry of a deficiency judgment stands unvacated. (*Emigrant Industrial Sav. Bank* v. *Von Bokkelen*, 269 N. Y. 110.)

The *Emigrant Bank* case merely involved a practice question. The doctrine of *Monaghan* v. *May* (242 App. Div. 64) in a proper case, free from practice difficulties, may be applied despite the passing observation respecting its doctrine in the *Emigrant Bank* case, which may not have been maturely considered, since the *Monaghan* case doctrine did not primarily concern any practice question. In the *Monaghan* case it was recognized, and hence not stressed, that the practice difficulty could be eliminated by resort to the court's power under *Hatch* v. *Central National Bank* (78 N. Y. 487) and *Ladd* v. *Stevenson* (112 id. 325), and that then equity's power could be exercised unhampered.

The *Monaghan* doctrine requires that one look to the early history of the heads of equity jurisdiction. It particularly requires recalling that equity courts invented the equity of redemption to save borrowers from the undue exactions of lenders in connection with mortgage pledges. Its doctrine was not an innovation. It was a modern restatement of an anciently exercised power. The soundness of that far-reaching and basic doctrine should not be abandoned by this court until the Court of Appeals has before it a case in which the question is squarely presented. Especially should this view obtain where that doctrine has been independently enunciated, contemporaneously with its statement in the *Monaghan* case, in the well-informed courts of a sister State where comprehensive knowledge of doctrines of equity is an outstanding attribute by reason of that State retaining separate equity or chancery courts.

In New Jersey, mortgage moratorium statutes were held invalid on grounds not here pertinent. (*Vanderbilt* v. *Brunton Piano Co.*, 111 N. J. L. 596; 169 A. 177; *Sayre* v. *Duffy*, 13 N. J. Misc. 458; 179 A. 459.) At the same time, however, the chancery courts sustained the inherent power of equity to protect borrowers from undue exactions of lenders seeking deficiency judgments. In doing so they took judicial notice of economic conditions and determined, as the cases were presented, the beginning, extent and duration of

the depression and its effect on forced sales of real estate; in other words, the period during which emergency conditions may be said to exist which justify the exercise of inherent equity power. In ruling on equities, one element was whether or not the borrower had appeared or defaulted in the action and, if he defaulted, whether, despite that, facts existed which excuse him and entitle him to equity's consideration.

In *Federal Title, etc., Guaranty Co.* v. *Lowenstein* (113 N. J. Eq. 200; 166 A. 538), decided May 9, 1933 (*Monaghan* case was decided July 3, 1934), the historical phase in respect of inherent power is developed at length at pages 207–209, by Vice Chancellor BERRY and concurred in by Vice Chancellors BACKES and STEIN.

In *Young* v. *Weber* (117 N. J. Eq. 242; 175 A. 273) Vice Chancellor BERRY (Nov. 10, 1934) re-examined the historical basis for sustaining inherent equity jurisdiction to refuse, where in equity and good conscience it should, a deficiency judgment. This opinion was concurred in by all the Vice Chancellors and the Chancellor, that is, the entire Chancery Bench of the State of New Jersey. He there pointed out that exercising that jurisdiction was an enforcement in part of the ancient equitable maxim, "equity will not suffer a double satisfaction to be taken," and he quoted with approval from an earlier case in which BACKES, V. C., wrote: "Satisfaction of the debt and not pillage of the debtor's estate is equity's relief." To the same effect is *Better Plan B. & L. Assn.* v. *Holden* (114 N. J. Eq. 537; 169 A. 289); and in *Broadman* v. *Colonial Building-Loan Assn.* (—— N. J. L. ——; 178 A. 775) an instance appears of a refusal of relief to one seeking to avoid a deficiency judgment.

In view of these supporting adjudications of the courts of final resort in a sister State in what might be called the metropolitan area, we do not deem it expedient to acquiesce in a holding which by inference unnecessarily adopts the narrow view that equity courts are impotent and powerless in a situation that always has been deemed, from time immemorial, to be peculiarly within equity power and jurisdiction. Until in a case, where practice questions readily eliminated under sound procedure are not involved, it is declared that courts of equity are impotent despite these respectable holdings to the contrary, we will adhere to the primary doctrine (practice questions aside) of the *Monaghan* case. We are impelled to this course because of the innumerable cases in which the salutary doctrine of the *Monaghan* case has been applied to effect results required in good conscience.

LAZANSKY, P. J., YOUNG, HAGARTY, CARSWELL and DAVIS, JJ., concur.

On reargument, orders reversed on the law, with ten dollars costs and disbursements, and motions denied, with leave, if defendants be so advised, to move to vacate the judgment of foreclosure and sale so as to provide for the entry of a judgment that does not authorize a deficiency judgment in advance of an application therefor based on the report of sale.