THE SYRACUSE TRUST COMPANY, as Testamentary Trustee under the Will of CHARLES J. SMITH, Deceased, Plaintiff, *v.* GEORGE F. COREY and LIBBIE COREY, His Wife, ROSE HARRIS, HENRY KNIGHT, MOSE CANTOR and CELIA CANTOR, Defendants.

Supreme Court, Onondaga County, April 26, 1938.

*Ceylon H. Lewis,* for the plaintiff.

*Frederick F. Jillson* [*Clarence Unckless* of counsel], for the defendant George F. Corey.

SMITH (E. N.), J.   In January, 1936, the plaintiff conveyed to the defendant George F. Corey real property upon which there was a two-apartment house, known as 910 East Genesee street, in the city of Syracuse, N. Y., for the purchase price of $9,000, $2,000 of which was paid in cash and $7,000 thereof satisfied by the bond

of the defendant Corey, secured by a mortgage upon said premises. The mortgagor being in default in the payment of interest and taxes and an installment of principal, the mortgagee brought this action in foreclosure and on the 9th day of February, 1938, procured a judgment of foreclosure and sale which provided: " If the proceeds of the sale be insufficient to pay the amounts so reported due to the plaintiff as aforesaid, with the expenses of the sale, interest costs, allowances and taxes, assessments, water rates and interest as aforesaid, that said Referee specify the amount of such deficiency in his report of sale, and that the defendant George F. Corey pay the same to the plaintiff; and that the said plaintiff have judgment and execution therefor." Pursuant to this judgment, the premises were duly sold and bid in by the plaintiff, in its capacity as testamentary trustee as aforesaid, for the sum of $7,000. The referee reports that the amount due upon the mortgage at the time of the sale, March 9, 1938, for principal and interest, was $7,238.95; and that after paying taxes, $844.87, referee's fees and expenses, $109.80, costs awarded in the judgment, $249.25, and the application of the balance of $7,000, to wit, the sum of $5,796.08, there remained a deficiency of $1,442.87 " for which the defendant George F. Corey is liable under said judgment."

The plaintiff moves for a confirmation of the sale and for a deficiency judgment for the amount of $1,442.87 as aforesaid.

On March 24, 1938, the defendant Corey filed objections to the confirmation of the referee's report which definitely raise the questions herein considered.

There is no question raised here as to the validity of the judgment of foreclosure and sale, or as to the regularity of the sale or good faith thereat. The said defendant does, however, oppose the confirmation of the sale on the ground of the inadequacy of the purchase price, and makes appeal to the equity powers of the court to relieve him, in whole or in part, from the liability for a deficiency judgment in the amount indicated by the referee's report.

For the reason that the bond and mortgage in this instance were executed after July 1, 1932, the so-called " Emergency Mortgage Moratorium Acts " (Chapter 793 of the Laws of 1933, which added sections 1077-a to 1077-g, and chapter 794 of the Laws of 1933, which added sections 1083-a and 1083-b to the Civil Practice Act) have here no application, and the questions here raised must be approached as if the Emergency Acts of 1933 were never enacted.

Prior to the Revised Statutes enacted in the years 1827 and 1828, a court of equity had no power to render a deficiency judgment. (*Dunkley* v. *Van Buren*, 3 Johns. Ch. 330.) If the proceeds of the foreclosure sale were inadequate to satisfy the mortgage debt,

the recovery of a judgment for the deficiency was through an action at law.

By article sixth of title 2 of chapter 1 of part III of the Revised Statutes the situation in this respect was changed.

Section 152 of said article provides that " on the coming in of the report of sale, the court shall also have the power to decree and direct the payment, by the mortgagor, of any balance of the mortgage debt, that may remain unsatisfied after a sale of the premises, in the cases in which such balance is recoverable at law; and for that purpose, may issue the necessary executions, as in other cases, against other property of the mortgagor, or against his person."

Section 153 provides: " After such bill shall be filed, while the same is pending, and after a decree rendered thereon, no proceedings whatever shall be had at law, for the recovery of the debt secured by the mortgage, or any part thereof, unless authorized by the Court of Chancery."

This section 152 was the beginning of the combination of the action in equity for the foreclosure of the lien of the mortgage and the action at law for a deficiency judgment in foreclosure cases.

In 1863 (Chap. 392) section 152 of the Revised Statutes was incorporated as a part of section 167 of the Code of Procedure, and read as follows: " In actions to foreclose mortgages the court *shall have power to adjudge and direct payment,* by the mortgagor, of any residue of the mortgage debt that remains unsatisfied after a sale of the mortgaged premises, in cases in which the mortgagor shall be personally liable for the debt secured by such mortgage." It was carried into the Code of Civil Procedure in 1876 (Laws of 1876, chaps. 448, 449, as amd. by Laws of 1877, chaps. 416, 422, as amd. and supplemented by Laws of 1880, chap. 178), as section 1627, in the following language: " Any person, who is liable to the plaintiff for the payment of the debt secured by the mortgage may be made a defendant in the action; and if he has appeared, or has been personally served with the summons, the final judgment *may award payment by him of the residue of the debt remaining unsatisfied, after a sale of the mortgaged property, and the application of the proceeds,* pursuant to the directions contained therein." And after various amendments it was carried into the Civil Practice Act in 1920 as section 1083, in the following language: " If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment *may* award payment by him of the residue of the debt remaining unsatisfied, after a sale of the mortgaged property, and the application of the proceeds, pursuant to the directions contained therein."

Now, as to the practice which has been followed in reference to deficiency judgments, the decisions in the following cases are of interest:

In the case of *McCarthy* v. *Graham* ([1840] 8 Paige, 480) the chancellor decided " that the usual decree in such cases, for the payment of the deficiency, *upon the confirmation of the report of the sale,* in case it should appear from such report that the proceeds of the mortgaged premises were not sufficient to pay the debt and costs, was proper under the provisions of the Revised Statutes on this subject  *  *  *.  And that it was not necessary to wait until after the sale of the mortgaged premises before the *contingent* decree for the payment of such deficiency could be made."

In the case of *Bank of Rochester* v. *Emerson* ([1843] 10 Paige, 359) it was held that *an execution could not issue upon a judgment for deficiency until the confirmation of the report of sale,* and that if it issues before it is irregular and the court will not allow it to be confirmed *nunc pro tunc* to the prejudice of other creditors.  In that case, however, the judgment provided that an execution could not properly issue until the report of sale was filed and confirmed.

In *Bicknell* v. *Byrnes* ([1862] 23 How. Pr. 486) it was held that there was no necessity " for any application to the court for judgment against the mortgagor for the deficiency " when that judgment contains the clause providing for the deficiency; and that " A report of sale becomes confirmed in eight days from filing, unless excepted to,  *  *  *  and no application to the court becomes necessary."

In *Morris* v. *Morange* ([1868] 38 N. Y. 172) it was held that if a judgment in a foreclosure action directed a sale of the premises for the satisfaction of the debt, and provided that the defendant pay any deficiency appearing after the sale, it is final and not interlocutory merely.

In *Moore* v. *Shaw* ([1878] 15 Hun, 428) it was held that after the adoption in 1863 of the Code (§ 167), it was unnecessary to make application for confirmation of the referee's report of sale which showed a deficiency, where the judgment provided for such a deficiency.  The court said (at p. 430): " If the report in this case, so far as the judgment for deficiency and issuing execution to collect it, did not require confirmation, then it follows that no notice of filing was required to be given, and no rule of delay of eight days after filing, and before issuing execution, apply to this case."  The court, however, said: " The above conclusions may seem not in harmony with some reported cases, where, in the consideration of some other question than the one involved here, the court has assumed rather than decided that rule thirtieth is applicable to

this class of referees.  \*  \*  \*  It may well be that for the purpose of giving a deed to the purchaser,  \*  \*  \*  that confirmation of the referee's report is proper or necessary." (See *Seaman* v. *Clarke*, 60 App. Div. 416.)

There is nothing in the Rules of Civil Practice upon the subject of deficiency judgments. Rule 261, which relates to the disposition of any surplus moneys, does provide that no report of sale shall be filed *or confirmed* unless accompanied by proper vouchers, etc.

In *Bondy* v. *Aronson & List Realties, Inc.* ([1929] 227 App. Div. 136) our Appellate Division stated (at p. 139): " There is no statutory limitation for the docketing of a deficiency judgment in an action of foreclosure, and it is unnecessary to confirm the referee's report before issuing an execution or to enter any further judgment upon the filing of the report." (Citing *Brown* v. *Faile*, 112 App. Div. 302.)

In *Monaghan* v. *May* ([1934] 242 App. Div. 64, at p. 66) the court said, in reference to section 1083 of the Civil Practice Act: " In exercising its statutory jurisdiction, a court of equity will be guided by equitable principles. To obtain a deficiency judgment and determine the amount thereof, it is necessary to invoke equitable power to confirm the sale had under the judgment of foreclosure. When seeking affirmative judicial action in equity, one may not succeed if one is asking an inequitable or unconscionable result. Equity may refuse to confirm such a sale where it has produced an inadequate price." (Citing *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, at p. 446.)

I am not unaware that our Court of Appeals, in the case of *Emigrant Industrial Savings Bank* v. *Van Bokkelen* (269 N. Y. 110) did not approve the decision in *Monaghan* v. *May* (*supra*), but not in the respect that it has been quoted here, but rather because the court had, in the exercise of its equity power, improperly applied the provisions of section 1083-a to a sale under a judgment of foreclosure entered prior to the beginning of the emergency.

The question as to the effect of the filing of a report of sale in a mortgage foreclosure case as determinative of the amount of a deficiency judgment, involving as it does a confusion of law and equity, should be cleared up. In the first instance any confusion arose for the reason that an action at law was commingled in an action in equity when in foreclosure actions the court was given the power in the same equity action to render a judgment of foreclosure and for damages.

Now it has been the general practice, from time immemorial, to apply to the court for an order confirming the sale and fixing the amount of the deficiency judgment. When we use the words

" final " and " interlocutory " in reference to a decree, care should be exercised, because a mere declaration that something that really is interlocutory is final does not make it final, and does not make that which is not interlocutory interlocutory. A decree of foreclosure is final, in so far as it determines the rights of the parties, and as to who, if any one, is liable for any deficiency. It is interlocutory, of course, in that it directs a sale of the mortgaged property; it is final in that it directs a deficiency judgment in case the proceeds of the sale are inadequate to pay the amount due upon the mortgage. It of course is interlocutory in so far as the amount of any deficiency judgment is dependent upon the report of the referee. The almost immemorial practice has been to file the report of sale within a definite period of time, and, after the lapse of such time, apply for a confirmation of the sale, which, in the absence of objections filed, followed almost as a matter of course.

Section 1083-a assumes this practice, for it says: " Simultaneously with the making of a motion for an order confirming the sale * * * the party to whom such residue may be owing may make a motion for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought."

It should be noted that in section 1083 of the Civil Practice Act a power is granted to a court of equity to award a deficiency judgment, and that this power is discretionary, not mandatory. There can be no determination of the amount of a deficiency judgment until after the sale of the property and the application of the proceeds thereof towards the payment of the mortgage debt. Upon application for confirmation of the report of sale, the court has — or should have — before it the judgment and the report of sale, and it would then consider: (1) What are the provisions of the judgment? (2) Was the sale regular, and were proper and timely notices of the sale published and posted? Where there were gross failures to comply with the rules as to sales, or with the terms of the judgment itself, as distinguished from mere irregularities, confirmation might be refused. If there were opposition to the confirmation on the ground of inadequacy of the price at which the property was sold, and always in cases where the mortgagee purchased the property, there would be inquiry as to the amount of the purchase price and the amount of the claimed deficiency judgment; and if the sale price was so inadequate as to shock the conscience of the court (and this happens many times when the mortgagee takes title to the property and asks for a deficiency judgment), the court might refuse to confirm the sale, or refuse to allow a deficiency judgment for the amount claimed, and, in extreme cases, might even order a resale where the amount of the deficiency judgment demanded

was so shockingly excessive as to raise an implication of fraud. This practice had been pursued in this State prior to the Moratorium Acts of 1933, on the ground that it was within the broad powers of a court of equity to see to it that it tolerated no injustice, following the maxim that he who would come into a court of equity must come with clean hands; moreover, confirmation is usually required, throughout the country. (19 R. C. L. 394.)

While the law of the State of New York has become largely statutory and there is a narrow field left for the development of common law through judicial decision, nevertheless the general equity powers of the court remain largely unimpaired, excepting where a statute is so rigid as to inhibit the application of equitable doctrines.

An old definition of the province of a court of equity was that equity operates in that realm where the law, by reason of its generality, works injustice. We are apt to forget, in this statutory age, and in the presence of a tendency to eliminate the distinction between a court of equity and a court of law, particularly as to procedure, that there has been little interference by the Legislature with the equitable powers of the court. If justice is to prevail, the courts themselves should know and be tenacious in preserving their equity powers and jurisdiction, even though courts of chancery have been abolished and equity and legal jurisdiction are concentrated in the same court.

While it is true, as above noted, that there is finality in a judgment of foreclosure, there is not and can not be finality as to the amount of a deficiency judgment or as to the validity of the execution of the judgment.

I am not overlooking the inherent power of courts to make corrections of errors in their judgment; but that power is too limited to meet a situation such as we have in mortgage foreclosures where there are judgments for deficiency authorized.

It will be noted that there has been here an effort totally to eliminate impressions gathered and views expressed in the interpretation of section 1083-a of the Civil Practice Act. However, this section and the interpretations of it reveal the necessity of the retention and the exercise of the equity powers of the court in reference to deficiency judgments, whether obtained during " the emergency " or not. The emergency did not occasion the creation of any new power, but, on account of it, that power was enlarged and a method was prescribed for the exercise of that power, especially in so far as it was extended. As a method of procedure of the court, in the exercise of its normal power, it might be, but not necessarily should be, used.

According to the decision in the case of *Bondy* v. *Aronson & List Realtors, Inc.* (*supra*), the plaintiff might have a deficiency judgment as of course, by filing the report of sale, for the amount of $1,442.87, if adhered to. The able counsel for the plaintiff, however, out of the wealth of his experience and his wide acquaintance with the principles of law and equity, has seen fit to come and very properly does come to this court for a confirmation of the referee's report of sale, and asks for a declaration of the amount of the judgment for deficiency as contained in the report; he realizes that this power of the court exists, and he has invoked the exercise of that power.

I have carefully examined the affidavits filed by both parties. The plaintiff is asking for a confirmation of the report of sale and for a deficiency judgment, which is practically made up of the amount of taxes paid by it, the insurance premiums paid by it, and the costs of this action. The plaintiff purchased the property for the face amount of the mortgage. The defendant purchased this property from the plaintiff for $9,000, paying $2,000 down, and giving back a purchase-money bond and mortgage for $7,000; he was in default in the payment of taxes and in the payment of interest, although he had the possession of the property from the date of his purchase thereof; he is asking the court today, in effect, that, because he made a bad bargain, therefore, he should not live up to it. He is asking that this court set aside this sale on the ground of inadequacy in the purchase price. He makes no showing that if the property were put up for resale there will be a larger amount realized. This, of course, is a condition precedent to such a motion. There is no such inadequacy here as to shock the conscience of any court; on the contrary, the defendant has been in continuous possession of this property, receiving its rents even after his default in the payment of interest and taxes. There is nothing, under the rules and practice, to justify a new sale or to lead the court to deny a confirmation. We are not here under the provisions of section 1083-a; but, even if we were, an examination which in such case would be required would not, in my judgment, lead to any other or different result than that there is nothing here to appeal to the conscience of the court.

The motion of the plaintiff is granted; the report of sale is confirmed, and a deficiency judgment is allowed in the sum of $1,442.87 as of March 12, 1938, the date of the report of sale.

Ordered accordingly.