Jacob Ark, J.
This is a motion by the defendant, Gertrude Chapman, (herein defendant) for an order opening her default in the above-entitled action and allowing her to interpose an answer which was submitted as part of the moving papers.
The plaintiff in this foreclosure action holds a first mortgage in a sum in excess of $3,000,000 which is in default on premises known as Arborwood Apartments in the City of Rochester, New York. The defendants are the Rochester Area Council of Churches Development, Inc., a nonprofit corporation (herein Council), the present owner; the Rochester Housing Authority, a public corporation (herein Authority), a part owner of both the premises and a second mortgage; the City of Rochester, a municipal corporation, and the Department of Housing and Urban Development of the United States (Housing Assistance Administration), a department of the United States Government, a part owner of a second mortgage. The more than 300 remaining named defendants are apparently tenants in the mortgaged premises.
All the defendants have been served with process. The Council, the Authority and the City of Rochester have not served answers hut have served notices of appearance. The Housing Assistance Administration and the United States have not answered or served notices of appearance. None of the tenants have appeared or answered except for this application of the *840 defendant, Gertrude Chapman, who is a tenant on a month-to-month basis.
The posture of the case is such that there is no denial of the allegations in the complaint by any of the defendants, except that the movant by her answer seeks to put in issue the plaintiff’s right to the relief it seeks. The defendant has satisfactorily explained her default. The issue before the court, however, is whether there is alleged in her answer a defense that could defeat the plaintiff’s cause of action. “ Even were we to assume the existence of an excusable default, the default would not be opened unless defendants disclosed a meritorious defense to the action.”. (Montmarte, Inc. v. Salvation Army, 20 A D 2d 536, 537.) “ ‘ Insistence on the observance of the rule makes for the orderly administration of justice, and is not the enforcement of a mere technical rule of practice.’” (Investment Corp. of Phila. v. Spector, 12 A D 2d 911.)
The plaintiff, by a consolidation and spreading agreement dated August 20, 1968 and recorded on October 11, 1968 with Shoremont Park, Inc., the then owner, established a mortgage lien on the property in the sum of $3,272,944.51. The Council purchased the premises from Shoremont Park, Inc. by deed dated February 18, 1969 and recorded on March 20, 1969, for which it paid $1,200,000 and assumed the plaintiff’s consolidated mortgage on which there was the unpaid principal sum of $3,255,216.72. The cash consideration was furnished through the Authority for which the Council gave it a 26% interest in the premises and a second mortgage in the sum of $1,200,000 in which the Authority and the Housing Assistance Administration are the mortgagees.
The defendant’s answer consists essentially of a general denial and seven affirmative defenses that vary from the first such defense that the defendant’s tenancy be continued for the period of one year from the date of the foreclosure within which the United States has the right to redeem the premises as provided by section 2410 of title 28 of the United States Code to the last-alleged defense that the provision for housing is a governmental function which would be interfered with by the foreclosure at the hands of the plaintiff which benefited by moneys paid by the Authority and the Federal Government.
Subdivision (c) of section 2410 of title 28 of the United States Code provides that “ Where a sale of the real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem ”.
*841 In United States v. Bank of Amer. Nat. Trust and Sav. Assn. (265 F. 2d 862, 868, revd. on other grounds 363 U. S. 237), the court held! “ In our opinion c. compliance with subsection ‘ (e) ’ is a condition of the Government’s consent to be sued under Section 2410. Subsection (c) requires (1) a judicial proceeding in which the Government may assert its lien; and (2) the right of redemption within one year from the date of sale. Many states do not provide any period of redemption, so that regardless of the method of foreclosure, the Government often has a right not available to private lien holders. This is an express condition of the Government’s consent to be sued.”
The defendant urges that, since the Government has a one-year right of redemption, her tenancy should not be interfered with during that period, as the benefit of the lease would be lost to the redemptor. Notwithstanding, that this is of no concern to the defendant, that argument assumes that the lease is something of value to the property when in all likelihood the terms of the tenancy were a contributory factor to the circumstances that resulted in foreclosure. Be that as it may. there is no New York authority, statutory or otherwise, that a lease made subsequent to a recorded mortgage (which is the situation here) should remain in effect for the duration of a redemption period fixed by Federal statute for the Government’s protection. The Federal law which merely gives the Government the right of redemption affects only the title of the mortgaged premises for that period after a foreclosure sale. It is so recognized by the courts of this State. (Co-operative Loan and Sav. Soc. v. McDermott. 14 A D 2d 590: Eawitable Life Assur. Soc. v. Hochstein, 45 Misc 2d 450.) For the defendant to have any enforceable right as a third-party beneficiary, as she claims, it must be shown that the plaintiff made a promise upon a valid consideration to a third party for the defendant’s benefit, although she was not privy to the consideration (Lawrence v. Fox, 20 N. Y. 268). There is a complete absence of such a showing.
The defendant relies upon Monaghan v. May (242 App. Div. 64), for the proposition that “ When confronted by crisis or emergency circumstances the courts of New York have acted to alter or deny the equitable remedy of foreclosure.” In that case the court applied the moratory statute (L. 1933, ch. 794) that went into effect on August 28, 1933 to property sold under foreclosure on August 11, 1933, on the ground that “ a court of equity may do this during such times as it deems are within the period of economic stress and emergency, which period may be equal to or greater than that fixed by the Legislature.” (p. 65).
*842 In (National City Bank v. Gelfert (284 N. Y. 13,19), the court said: " the theory of Monaghan v. May .seemed to us to go against the grain of settled ideas of the nature of equity. The ‘ conscience ’ which is >an element of the equitable jurisdiction is not the private opinion of an individual court, but is rather to be regarded ‘ as a metaphorical term, designating the common standard of civil right and expediency combined, based upon general principles and limited by established doctrines, to which the court appeals, and by which it tests the conduct and rights of suitors — a judicial and not a personal conscience.’ (1 Pomeroy’s Equity Jurisprudence [4th ed.], § 57. So, 1 Spence, Equitable Jurisdiction of the Court of Chancery, pp. 413, 414; Snell, Principles of Equity [22d ed.], .p. 3.) In that view, the ‘ doctrine ’ of Monaghan v. May was rejected by us when Guaranteed Title & Mortgage Co. v. Scheffres [246 App. Div. 532] was reversed in this court. (275 N. Y. 30.) ”
There are no facts before the court that give any indication that there were benefits received by the plaintiff or conduct on its part that require the application of the doctrine of estoppel against it. The plaintiff advanced its funds and secured a first lien on the premises before any public money was put into this project. It had no right to approve or disapprove of further financing, regardless of the source. That funds .provided for under public housing laws were subsequently used could in no manner affect the plaintiff’s lien which was a vested right. Not only did National City Bank v. Gelfert (supra) disapprove of Monaghan v. May (supra), which made the moratory statute effective 17 days sooner than fixed by the Legislature, but in the instant case, the defendant seeks to have the court by judicial decision go much further and create a moratorium.
When there is a serious public emergency affecting the welfare, comfort and safety of citizens, it is only the Legislature, that is in a position to meet that challenge. It did so by chapter 793 of the Laws of 1933 when it declared a moratorium on foreclosures when there was a default in the payment of principal.
On a previous occasion this court held that it is a matter of common knowledge that in large urban areas there is a critical shortage of decent dwelling units, which is a national problem that all levels of the government have failed to solve (Golden v. Gray, 68 Misc 2d 679, 684-685). The court pointed out that “ The primary role of the courts is to decide cases and not create new or substantially change existing legal principles by judicial decision.”
*843 It would seem that unwarranted interference with enforcement rights under a mortgage held by a nonpublic lending institution, on the ground that there was a subsequent infusion of public money into the mortgaged property, would be a disservice to the cause of much needed large-scale housing.
The proposed defense to this action is without merit, as the foreclosure violates no rights of the defendant under constitutional provisions, statutory enactments, or established common-law principles.
Motion denied.