OPINION OF THE COURT
Loren N. Brown, J.
Though not consolidated, these cases, for reasons to become *904 apparent, will be treated together. Standing alone, each case may deserve different results. Addressed together, the result reached in both is just and proper.
These actions are for foreclosure of mortgages on real estate. Defendant Gus P. Capetandes owned property at 46 Preakness Way, Saratoga Springs, New York. Patrick Weber owned property known as 29 Winners Circle in Saratoga Springs. Both premises were mortgaged to plaintiff Manufacturers and Traders Trust Company (hereinafter M&T). Both premises are to be found in a failed housing development known as The Springs and being developed by The Springs Associates. Construction in the development was halted before its completion and foreclosure proceedings were taken against The Springs affecting the unsold units. Before that foreclosure, units such as that owned by defendants Capetandes and Weber were sold by The Springs Associates, and occupied by the purchasers. The plaintiff was represented in the Capetandes and Weber sales by Block & Colucci, P. C. At the closing of his property, Mr. Capetandes was represented by Lawrence LaBelle. Mr. LaBelle was also a partner in The Springs Associates. Mr. Capetandes denies knowledge of Mr. LaBelle’s patent conflict of interest.[1] For a fee of $200, Mr. Weber was represented by Block & Colucci, M&T’s attorney.
Security for the loans was questionable from the start. Because of the incomplete nature of the development, "conditional” certificates of occupancy were issued for Capetandes, Weber and other buyers.[2] M&T wrote the mortgage, in the absence of an unconditional certificate, upon the assurances of The Springs Associates that the infrastructure would be completed and that certain conditions would be satisfied.[3] A letter from Block & Colucci to The Springs Associates, submitted by defendant Capetandes, complains that final, unconditional certificates of occupancy have not been provided to M&T, and that that failure "renders these loans unsaleable on the secondary mortgage market”.
In the course of time, several of the owners defaulted on the *905 mortgages. The plaintiff brought these actions to foreclose, obtained judgments of foreclosure by default, and conducted foreclosure sales which left deficiencies. The plaintiff has now moved for an order permitting it to take deficiency judgment in each case. Both Capetandes and Weber oppose the motions, and Weber has cross-moved for an order vacating the default.
In seeking deficiency judgments, the plaintiff calls upon the equitable power of the court. (Monaghan v May, 242 App Div 64, mod on other grounds 242 App Div 733.) Here, equity will not permit the award of the judgments sought.
Taken together, the two mortgages and the surrounding circumstances suggest a pattern of issuing mortgages without sound business practices. The plaintiff, after all, wrote the mortgages knowing that its security was suspect. Knowing that the certificate was deficient, and knowing that the development was not complete, it nonetheless took a calculated gamble and lost. With the failure of the development, the plaintiff must take the consequences of its losing gamble, without looking to these mortgagors to insure it against risk.
In the context of the Weber mortgage, the plaintiff’s conduct, or that of its legal representative, is even more questionable. Block & Colucci facilitated the sale by representing both the bank and Weber. Though the bank’s attorneys allegedly explained the concept of dual representation to Mr. Weber, and proceeded to represent both mortgagor and mortgagee with his consent, where, as here, the “conflict [of interest] extends to the very subject matter of the litigation” dual representation will not be sanctioned. (Greene v Greene, 47 NY2d 447, 452.) Essentially, Weber was placed in this circumstance, in part, by the conduct of the bank’s attorneys.
In sum, the bank must be satisfied with the proceeds it received from the impaired security it blithely accepted. Equity demands no less.
Addressing the cross motion to vacate the default, the movant has not given a satisfactory excuse for the default. That relief is denied.

. The record does not reveal whether the plaintiff was aware of this conflict, though it did have some direct dealings with The Springs Associates.

. The pertinent section of Saratoga Springs Code § 135-32 does not refer to certificates of occupancy as conditional or unconditional. Pursuant to that section, the building inspector must approve or disapprove occupancy.

. Apparently no performance bond was required by the City of Saratoga Springs or the mortgagor though the record is not clear.