WILHELMINA STEHL and Others, as Executors, etc., of EDWARD R. STEHL, Deceased, Respondents, *v.* HARRIS H. URIS and Another, Defendants, Impleaded with EMANUEL M. KRULEWITCH, Appellant.

First Department, October 31, 1924.

Mortgages — foreclosure — deficiency — extension agreement entered into by executor of mortgagor does not impose personal liability on executor for deficiency — leave to sue executor should not be granted nine years after it was ascertained on foreclosure that deficiency existed.

An agreement executed by the executor of a mortgagor and the mortgagee extending the due date of the mortgage, does not, in the absence of specific stipulations therein, make the executor personally liable for any deficiency that may arise on the foreclosure of the mortgage and sale of the premises.

Leave will not be granted to sue the executor, personally, on the bond to recover the deficiency, where more than nine years have elapsed since it was ascertained on foreclosure that a deficiency existed, and where the estate represented by the executor is without funds to reimburse him and he has never been given notice of any intention to hold him personally liable for the deficiency.

APPEAL by the defendant, Emanuel M. Krulewitch, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 15th day of May, 1924, granting the plaintiffs leave *nunc pro tunc* to bring this action against the defendants, and granting leave to serve an amended complaint.

*Jacob H. Corn* [*Isaac Siegel* with him on the brief], for the appellant.

*Phillips & Avery* [*Talbot M. Malcolm* of counsel; *Earl A. Darr* with him on the brief], for the respondents.

McAvoy, J.:

The question here is thus stated by appellant: " Where foreclosures were begun without claiming an individual liability against an executor, and such foreclosures resulted in sales producing deficiencies; and furthermore the plaintiff's testator acquired the properties through and subsequent to such foreclosures, more than a decade ago, and not having at any time in such foreclosures suggested any personal claim against these executors, will leave be granted at this late date to begin an action to hold such executors to such alleged personal liability? "

There are two causes of action stated in the complaint, based on an alleged personal promise to pay contained in mortgage extension agreements, and the causes of action are practically identical.

In April, 1907, Isaac Levy and Simon Weinstein jointly executed a bond for $9,000 due in April, 1909. This bond was the usual bond to accompany a mortgage on real estate (507 West One Hundred and Thirty-eighth street, New York city). This Simon Weinstein, one of the obligors, is the testator of defendant (the appellant here). He died on February 19, 1909, and letters testamentary were thereafter issued on April 12, 1909. Appellant Krulewitch and the other executors of Weinstein signed an agreement extending the time for the payment of this $9,000 mortgage for three years, to the 5th day of April, 1912. The procuring of this extension was for the benefit of their testator's estate and had no personal advantage. The defendant is claimed to be liable for $9,000 and interest on this instrument in the first cause of action, and in the second cause of action there is a similar demand. The instrument shows on its face that these defendants executed the same in their capacity as executors and trustees. It shows on its face that it was an extension of the time to pay a debt created by the testator himself and not by the defendant. The original security is unimpaired.

The debt was not one created by these defendants either individually or as executors. It was a debt originally created by the decedent Weinstein in his lifetime, and these defendants simply agreed, while executors and trustees and in possession of the property as such, to an extension of the time of payment of the mortgage debt, the extension agreement containing nothing to suggest any intent on their part to make themselves personally liable nor any desire on the part of the obligee, the plaintiffs' testator here, to exact any personal liability from the executors.

On November 29, 1911, plaintiffs' testator began a foreclosure of said mortgage, filing a notice of pendency of that action on that date for that purpose. The defendants here were described by their names, adding the words " as executors of and as trustees under the last will and testament of Simon Weinstein, deceased." The complaint that was filed to accompany this *lis pendens* contained a caption which described the defendants in the same manner. Prayer for judgment contained no request to hold these executors to any personal liability based on the extension agreement or any other agreement but on the contrary distinctly showed that any claim for a deficiency was for a deficiency against the estate and the estate only, for they used the following language in the prayer for judgment: " And that the defendant   *   *   *   and Emanuel M. Krulewitch, as executors of and trustees under the last will and testament of Simon Weinstein, deceased, be adjudged to pay any deficiency which may remain   *   *   *."

The plaintiffs' testator, Edward R. Stehl, procured the appoint-

ment of a receiver of the rents. This mortgage was a junior mortgage, and after the receiver was appointed nothing was done except to leave the receiver in possession and collect rents, until about two and one-quarter years thereafter when Benjamin Mordecai, the first mortgagee, started an action to foreclose the first mortgage on the premises.

In the first mortgage foreclosure these defendants were joined only as executors and trustees. This first mortgage foreclosure was prosecuted to a decree of foreclosure and sale. There was a deficiency exceeding $2,000 on the first mortgage. The report of the referee to sell recites: " There remains a deficiency  *  *  * for which, according to said judgment, the defendants Harris H. Uris, Adolph Hirshfeld and Emanuel M. Krulewitch as executors of and under the last will and testament of Simon Weinstein, deceased, are liable."

No personal judgment has ever been entered on this first mortgage foreclosure for the deficiency, nor has any attempt been made by the plaintiffs' testator or by the plaintiffs here to prosecute the second mortgage action which he started, to a judgment for a deficiency against these defendants either as executors or individually.

The foreclosure of the other property, 511 West One Hundred and Thirty-eighth street, took the same course. That is, as the record shows, the action to foreclose was started June 24, 1912 (six months after the other one); a receiver was appointed for the rents; no personal judgment for deficiency was claimed; the matter was allowed to rest until 1914, when the first mortgagee on that parcel also started foreclosure, prosecuted same to a sale and deficiency on the first mortgage, making no claim of personal liability against these defendants; and both parcels were sold by the respective referees. As to one parcel, the referee knocked down the property to the plaintiffs' testator, Edward R. Stehl, who assigned his bid to Lawrence Davis, to whom the referee executed the deed on December 31, 1915. Davis thereafter, within four days, deeded the property over to plaintiffs' testator, Edward R. Stehl.

As to the other parcel, the referee knocked the property down to Robert C. Baker, who assigned his bid to the same Lawrence Davis; and the referee executed the deed on July 12, 1915, to the said Lawrence Davis. Lawrence Davis on the same day, to wit, July 12, 1915, deeded the property to plaintiffs' testator, Edward R. Stehl. On July 15, 1915, more than nine years ago, Edward R. Stehl, plaintiffs' testator here, became the owner of this very property upon which this second mortgage rested. No measures

to enforce any personal liability against these executors were taken, nor was it endeavored to be shown that they were under any liability to him of an individual character.

These executors have no assets of the deceased. They have no way to reimburse themselves if they were to be held personally liable.

More than six years after the plaintiffs' testator sold the property to another, approximately nine years after he bought in the property in consequence of the foreclosure, and more than twelve years after the alleged liability now sought to be enforced accrued, an action is brought against these executors to hold them personally liable, although no notice that they were in peril of such personal liability was given to them at the time that the mortgage which created the debt was foreclosed.

We do not think that these facts indicate any equitable considerations which should move a court to grant leave to sue on the bond for the deficiency.

These extension agreements upon which it is sought to hold these defendants liable were executed around April 20, 1909. Under them the two debts of $9,000 each matured, respectively, April 5, 1912, and May 1, 1912, approximately the same time. The action at bar, which represents the first effort to hold these defendants personally liable, was commenced December 15, 1923, almost twelve years having elapsed. A person who rests upon his equitable rights an unreasonable length of time is barred from equitable relief for laches. Plaintiffs certainly knew by February, 1916, and July, 1915, from the respective referees' reports, that there were deficiencies as to the first mortgages and that their second mortgages were " wiped out." The deeds to Stehl, plaintiffs' testator, from his grantors, are dated respectively July, 1915, and January, 1916. It was apparent from the referees' reports in 1915 what the situation was. Stehl, nevertheless, rested on his rights for a period of approximately nine years.

In the meantime these defendants are absolutely without any assets from which they can reimburse themselves. Emanuel M. Krulewitch is the sole responsible defendant. Levy, who jointly executed the bond with defendant's testator Weinstein, was adjudged a bankrupt. The defendant Harris H. Uris did not appear in the court below to oppose the application, and the other defendant, Hirshfeld, appeared only to plead his prior discharge in bankruptcy and does not appear on this appeal. The burden thus rests upon Krulewitch, this appellant, alone.

Presiding Justice VAN BRUNT at General Term said in *United States Life Ins. Co.* v. *Poillon* (7 N. Y. Supp. 834) after pointing out

that the action was to enforce against the heirs a foreclosure deficiency judgment (p. 835): " The action was commenced without leave of the court. A demurrer upon the part of one of the defendants that the complaint did not set forth a cause of action having been sustained upon the ground that leave to sue had not been obtained as required by section 1628 of the Code,* the plaintiff obtained an *ex parte* order permitting it to sue   *   *   *. It was reversed at the General Term, upon the ground that notice should have been given   *   *   *. Thereupon the plaintiff renewed its application   *   *   *. Applications of this kind are necessarily addressed to ·the sound discretion of the court. If the circumstances are of a character that render it inequitable to allow the deficiency judgment to be enforced, then the court, being governed by principles of equity in granting or refusing such an application, should deny the same. The plaintiff in this action commenced its proceeding in entire disregard of the provisions of the Code in this respect, and it was not until a demurrer had been sustained to its complaint that it made any effort whatever to obtain the order in question   *   *   *. We are of opinion that, for the reasons stated in the opinion of the learned judge who heard the application in the court below, the same was correctly denied   *   ·*   *. It is perfectly clear that the equitable considerations which call upon the court to deny this application could not be availed of as matters of defense in the action itself. And it was because these equitable considerations, which might constrain the court to deny an application of this kind, could not be set up by way of answer in the action, that the provision of law obtained, requiring applications to be made to the court for leave to sue under circumstances like those in the case at bar.

" If it had been possible to set up these considerations in the case itself, there would be no necessity for a provision of law that application should be made to the court for leave to sue; and, as already stated, these applications are to be disposed of upon equitable principles; and if it should be inequitable to allow the enforcement of the deficiency judgment under all the facts and circumstances of the case, as they existed at the time of the application, then the court is called upon to deny. the motion.   *   *   * The order appealed from should be affirmed.   *   *   * "

In *Hochstein* v. *Schlanger* (150 App. Div. 124; affd., 208 N. Y. 513) in April, 1912, a similar ruling as to the duty of the court to apply. equitable principles in applications for this relief was made. It was pointed out that " Where the plaintiff in a foreclosure suit fails to join as a defendant a party liable for the payment of the

* Now Civ. Prac. Act, § 1078.— [REP.

debt secured by the mortgage, the court may refuse to permit the plaintiff, after exhausting his remedy against the principal debtor, to bring a subsequent suit against such party." .

In that case a party liable for the debt was properly joined in the foreclosure. He demurred, claiming that he could only be held liable in a separate action. The court, overruling this contention, in referring to section 1627, subdivision 1, of the Code,* which requires all persons liable to be made defendants in the action, recited the purpose of the enactment (at p. 126): " The purpose of the provision of the Code was to dispose of the entire proceeding in one action so as to avoid a multiplicity of suits. (*Robert* v. *Kidansky*, 111 App. Div. 475; *Equitable Life Ins. Society* v. *Stevens*, 63 N. Y. 341; *Scofield* v. *Doscher*, 72 id. 491). If plaintiff had failed to make Schlanger a party defendant, and waited to sue him at law after exhausting her remedy against the principal debtor and the mortgaged property, she would have been unable to sue without first obtaining the leave of the court (Code Civ. Proc. § 1628; *McKernan* v. *Robinson*, 84 N. Y. 105), and might be refused such leave for the very reason that she had omitted to make Schlanger a party to the foreclosure action and had thus prevented him from protecting himself on the foreclosure sale. (See *Darmstadt* v. *Manson*, 144 App. Div. 249.)"

The last case cited (*Darmstadt* v. *Manson*, 144 App. Div. 249) was decided by the Appellate Division in the Second Department; but as it has thus received the approval of this Department, its quotation as authority is germane. The headnote indicates the holding accurately. It reads:

" Plaintiff, in a suit to foreclose a mortgage, who entered a decree containing no provision for a deficiency judgment, so that the obligors on the bond secured by the mortgage were not called upon to appear at the sale and bid, in order that the lands might sell for an adequate price, should not, after the expiration of two years, be allowed to maintain a separate action upon the bond.

" Section 1628 of the Code of Civil Procedure confers no absolute right upon a mortgagor [mortgagee] to maintain a separate suit upon the bond after foreclosure. The power of the court to grant such leave is discretionary, and it will be granted only when specific reasons are shown why the personal liability was not enforced in the suit of foreclosure."

In *Equitable Life Ins. Society* v. *Stevens* (63 N. Y. 341, 345) the Court of Appeals ruled: " * * * So far, however, from its being

---

* Now Civ. Prac. Act, §§ 1079, 1083.— [REP.

made compulsory on the court to grant such permission in all cases, the general rule was against it, and special circumstances must be shown to justify a separate proceeding at law."

In *Scofield* v. *Doscher* (72 N. Y. 491) the court ruled that the aim of the antecedent statute (2 R. S. 191, § 151 *et seq.;* Id. § 153) is to dispose of the matter in one proceeding.

We think this cause under the circumstances recited above was one in which permission to sue on the extension agreement to enforce a personal liability against executors ought to have been refused.

The order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.