NATIONAL CITY BANK OF NEW YORK, Appellant, *v.* JULIA C. GELFERT, as Executrix of JAMES J. CARPENTER, Deceased, et al., Defendants, and GEORGE U. HAMMOND, as Executor of JAMES J. CARPENTER, Deceased, Respondent.

Argued April 8, 1940; decided October 8, 1940.

*Barney B. Fensterstock, Israel Akselrod* and *Theodore B. Wolf* for appellant.

*Charles H. Buckley* and *George Link, Jr.,* for respondent.

LOUGHRAN, J. The action is one to foreclose a real property mortgage. The estate of the deceased mortgagor is liable for any deficiency which the plaintiff is entitled to recover. Our moratory deficiency judgment act is inapplicable, for it does not affect mortgages or connected agreements dated on or after July 1, 1932, and the mortgage in suit was executed on December 29, 1932.

At the time of execution thereof, section 1083 of the Civil Practice Act provided that the measure of a deficiency judgment was the residue of the debt remaining unsatisfied after a sale of the mortgaged property and the application of the proceeds pursuant to the directions contained in the judgment of foreclosure and sale. So computed, the deficiency owing to the plaintiff-mortgagee, as shown by the report of the referee to sell, was $16,162.12. The plaintiff-mortgagee was the purchaser on foreclosure. It was noted in the court below that the sale price of $4,000 was not shockingly inadequate and that there was no showing of specific hope that much more would be obtained

upon a resale. (257 App. Div. 465, at p. 467.) On February 2, 1939, Special Term confirmed the report of the referee and ordered that a judgment for the stated deficiency should be docketed in favor of the plaintiff-mortgagee against the estate of the deceased mortgagor.

The judgment of foreclosure and sale had been entered November 15, 1938, and the sale had taken place on December 16, 1938. Theretofore and as of April 7, 1938, section 1083 of the Civil Practice Act had been amended by chapter 510 of the Laws of 1938. The gist of the change thereby made is in the provision that the amount of a deficiency judgment is to be fixed by deducting from the debt the market value of the property as determined by the court or the sale price, whichever is higher. The 1938 amendment also provides: " If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." This 1938 amendment we shall call the new section 1083.

On appeal by the estate of the deceased mortgagor, the Appellate Division ruled that the new section 1083 was applicable and that no motion for a deficiency judgment as therein prescribed had been made by the plaintiff-mortgagee. Accordingly the order of Special Term was modified by striking therefrom the direction for entry of a deficiency judgment and the judgment entered pursuant thereto was vacated. As appellant in this court, the plaintiff-mortgagee contends that the new section 1083, when so applied to mortgage contracts previously made, contravenes the command of the Constitution of the United States that " No State shall * * * pass any * * * Law impairing the Obligation of Contracts." (Art. I, § 10.)

(1) The measure of a deficiency judgment prescribed by the new section 1083 is in substance prescribed also by our moratory deficiency judgment act (Civ. Prac. Act, § 1083-a). But that act is addressed to a declared public emergency and, as we have indicated, does not apply to mortgages or connected agreements dated (as are the instruments in suit)

on or after July 1, 1932. The new section 1083 does not invoke the general welfare and sets up no conditions pertinent to emergency relief. When it was enacted in 1938, the Legislature at the same session also extended the operation of our moratory deficiency judgment act until July 1, 1939. The function of that act has since been continued and is now to be effective to July 1, 1941. (See Laws of 1938, ch. 501; Laws of 1939, ch. 607; Laws of 1940, chs. 566, 567.) These circumstances make it clear to us that the new section 1083 concerns merely the private contract relationship of the parties to a real property mortgage and that as matter of fact the new section 1083 was not designed for the relief of urgent public needs. (Cf. *Home Bldg. & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Worthen Co.* v. *Thomas*, 292 U. S. 426; *Veix* v. *Sixth Ward Bldg. & Loan Assn.*, 310 U. S. 32.)

(2) On that basis, the question to be determined is whether the new section 1083 transcends the scope of the normal control over judicial remedies which the contracts clause of the Federal Constitution has left to the States. " It is well settled that while, in a general sense, the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing. It is true that the Legislature may not withdraw all remedies, and thus, in effect, destroy the contract; nor may it impose such new restrictions or conditions as would materially delay or embarrass the enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be done without impairing the obligation of the contract. But it is equally well settled that the Legislature may modify or change existing remedies or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract." (*Oshkosh Waterworks Co.* v. *Oshkosh*, 187 U. S. 437, 439. See the cases brought together in *Home Bldg. & Loan Assn.* v. *Blaisdell, supra,* at p. 434.)

(3) It is in order, then, next to examine the law whereby liability for a deficiency on foreclosure was regulated in this State before the new section 1083 became operative. At this point, we are pressed to give renewed consideration to the case of *Monoghan* v. *May* (242 App. Div. 64). The foreclosure sale there involved was held before our moratory mortgage legislation took effect. The court, however, judicially noticed an earlier existence of the emergency thereby declared. Upon findings that the true value of the property equalled the mortgage debt and that the mortgagee was the purchaser at a price so inadequate as to shock the conscience of the court, all liability for a deficiency was canceled, independently of statute and by dint of an avowal by the court of its " inherent power to place limitations upon the remedies available to a mortgagee in consonance with fundamental doctrines of equity." Acceptance of all that was so decided obviously would not answer the question now before us, since the new section 1083 is not emergency legislation, is not confined to cases where the sale price shocks the conscience, and is applicable whether a purchaser on foreclosure is the mortgagee or is a third party.

It may be worth while, however, to detail what actually was connoted by the broad statements made by the court in the *Monoghan* case. In *Guaranteed Title & Mortgage Co.* v. *Scheffres* (246 App. Div. 532) the mortgage debt was $10,500, the sale price was $8,000, and the deficiency was $4,857.58. This inadequacy of price was found to have shocked the conscience of the court and the defendants were given leave to move retroactively for the entry of a judgment which would not finally award recovery of a deficiency (247 App. Div. 294). In *Whorton* v. *Andretta* (246 App. Div. 827) the mortgage debt was $14,000, the sale price was $7,000 and the deficiency was $8,507.23. A sale price can be inadequate only in its relation to the worth of the property sold. Yet in the *Whorton* case the same court in precisely the same period of economic stress reversed an order that the market value of the property be determined for the purpose of ascertaining the amount of a deficiency

judgment, stating its reason as follows: " We are of opinion that under the circumstances disclosed here, the purchase price was not so inadequate as to shock the conscience of the court." Again, in *Central National Bank* v. *Marks* (243 App. Div. 526), the same court declared that the equitable relief considered in *Monoghan* v. *May* is not available to mortgagors " possessed of independent means."

As thus employed, the theory of *Monoghan* v. *May* seemed to us to go against the grain of settled ideas of the nature of equity. The " conscience " which is an element of the equitable jurisdiction is not the private opinion of an individual court, but is rather to be regarded " as a metaphorical term, designating the common standard of civil right and expediency combined, based upon general principles and limited by established doctrines, to which the court appeals, and by which it tests the conduct and rights of suitors — a judicial and not a personal conscience." (1 Pomeroy's Equity Jurisprudence [4th ed.], § 57. So, 1 Spence, Equitable Jurisdiction of the Court of Chancery, pp. 413, 414; Snell, Principles of Equity [22d ed.], p. 3.) In that view, the " doctrine " of *Monoghan* v. *May* was rejected by us when *Guaranteed Title & Mortgage Co.* v. *Scheffres* (*supra*) was reversed in this court. (275 N. Y. 30.) For our part, we thought better of the doctrine stated by that learned lawyer, DILLON, J., in these words: " Creditors have rights, as well as debtors. Courts stand between the two [and] administer the law *just as it is*, with even-handed impartiality * * *." (*Sloan* v. *Waugh*, 18 Iowa, 224, 227.)

The law which the court called upon in *Monoghan* v. *May* was in that case stated as follows: " To obtain a deficiency judgment and determine the amount thereof, it is necessary to invoke equitable power to confirm the sale had under the judgment of foreclosure. * * * No rights vest, per-force the judgment of foreclosure, in plaintiff for a deficiency judgment in any amount until plaintiff satisfies a court of equity that it would be equitable and just, as a consequence of what has occurred on the sale, to authorize the entry of a

deficiency judgment." (242 App. Div. at pp. 66, 67.) This statement did not accurately represent the New York law which (prior to the enactment of our moratory mortgage legislation) regulated the general right to recovery of a deficiency judgment in an action to foreclose a real property mortgage.

On the contrary, our previously existing statutory law of foreclosure had been interpreted in this manner: Liability for a deficiency was to be finally determined by the judgment of foreclosure and sale. The subsequent docketing of a deficiency judgment was a merely clerical act. Execution for a deficiency was issuable before confirmation of the report of the referee to sell or before a deficiency judgment was docketed, unless the court directed a resale in order to relieve a party from the consequences of unfairness, fraud, surprise or mistake. The deficiency was to be ascertained by a sale of the mortgaged premises and not by the estimates of witnesses or other less satisfactory evidence. (Civ. Prac. Act, former § 1083; *Morris* v. *Morange*, 38 N. Y. 172; *Wager* v. *Link*, 134 N. Y. 122; *Frank* v. *Davis*, 135 N. Y. 275; *Feiber Realty Corp.* v. *Abel*, 265 N. Y. 94; *Emigrant Industrial Sav. Bank* v. *Van Bokkelen*, 269 N. Y. 110; *Bondy* v. *Aronson & List Realties, Inc.*, 227 App. Div. 136; *Housman* v. *Wright*, 50 App. Div. 606. See Thomas on The Law of Mortgages [2d ed.], § 832.) This procedure always meant that on foreclosure the mortgagor was entitled to credit only for the net proceeds of sale realized by the mortgagee after the deduction of liens for taxes, etc., with resultant liability to the mortgagor for the deficiency (*Marshall* v. *Davies*, 78 N. Y. 414, 422) — a rule that was in keeping with the generally accepted proposition that a mortgagee owed no duty to his mortgagor to protect the equity of redemption but might deal with the mortgagor in respect of the mortgaged premises upon the same footing as any other person. (See *Ten Eyck* v. *Craig*, 62 N. Y. 406, 421; *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555, 579, 580; Rules Civ. Prac. rule 259; Thomas on The Law of Mortgages [2d ed.], §§ 972, 988.) It was this system of foreclosure that entered

into the engagement of the present parties and created and defined the legal and equitable obligations of their contract. (*Bronson* v. *Kinzie*, 1 How. [U. S.] 311.)

(4) This system of foreclosure has been markedly changed by the new section 1083. Under that section a mortgagee must on foreclosure bid in the property at a price that shall at least equal the market value as that value may thereafter be determined by the court or must go without any satisfaction of so much of the debt as equals the difference between the value as so determined and a lower price paid on a sale to a third party. These substantial alterations of the former statutory status of mortgagees are not to be temporary. They are not conditioned upon any equitable factor and leave no room for the play of any equitable consideration. They benefit every mortgagor irrespective of the character or amount of his investment and they burden every mortgagee no matter what his necessities. They reach indeed to all situations where for any reason whatever the price paid by any purchaser on a valid foreclosure sale falls short of the market value of the property as subsequently determined by the court.

In the face of all this, we do not see how a retroactive operation of the new section 1083 can be reconciled with the principle " that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation within the meaning of the Constitution of the United States." (*Barnitz* v. *Beverly*, 163 U. S. 118, 122.) Consequently we conclude that as to mortgage contracts previously made (as are the contracts in suit) the new section 1083 is void. (See *Home Bldg. & Loan Assn.* v. *Blaisdell, supra,* at pp. 431–434; *New York Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292, 296.)

(5) The foregoing presupposed the absence of any remedy substantially coextensive with that afforded by the former section 1083. We believe no such remedy exists.

Apart from our moratory mortgage legislation, a mortgagee of real property may still recover judgment for the mortgage debt as if no mortgage secured it. This remedy of an action at law for the debt cannot, we think, be deemed to be a fair equivalent of the remedy afforded by the former section 1083, inasmuch as the judgment debtor's equity of redemption cannot be sold under an execution issued upon a judgment for the mortgage debt or any part thereof. (Civ. Prac. Act, § 710.)

From the beginning our statutory system of foreclosure has prohibited a second action to recover a deficiency resulting on a foreclosure sale. (Civ. Prac. Act, § 1078.) Though power to relax that prohibition was conferred upon the court, the general rule was against the exercise thereof and it was settled that the burden of such a second suit was not to be laid upon a party who could have been made a defendant in the foreclosure action unless special circumstances were shown which manifestly required that course. (*Equitable Life Ins. Society* v. *Stevens*, 63 N. Y. 341; *Scofield* v. *Doscher*, 72 N. Y. 491; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Morrison* v. *Slater*, 128 App. Div. 467; *Darmstadt* v. *Manson*, 144 App. Div. 249; *Stehl* v. *Uris*, 210 App. Div. 444.) Leave to bring so restricted a second suit is not to be granted in proceedings under our moratory deficiency judgment act. (Civ. Prac. Act, § 1083-a; *Honeyman* v. *Hanan*, 275 N. Y. 382, 392.) Even if we assume that the new section 1083 has not likewise superseded section 1078 of the Civil Practice Act, in our judgment the limited judicial discretion permitted by section 1078 could not be made an effective instrumentality for the replenishment of the rights which section 1083 has now taken away from mortgagees:

(6) The new section 1083 was enacted upon the recommendation of a joint legislative committee whose report said: " The present emergency Deficiency Judgment Law can no doubt be made permanent if the Legislature so desires, under the authority of the decision of the United States Supreme Court in the case of Richmond Mortgage & Loan Corporation *v.* Wachovia Bank & Trust Co., et al., Executors,

300 U. S. 124." (N. Y. Leg. Doc. [1938] No. 58, p. 35.) In the case thus cited, the court upheld a North Carolina statute providing that when the holder of an obligation secured by real estate causes a trustee's sale of the property at which such holder becomes the purchaser for less than the amount of the debt and thereafter such holder brings an action for a deficiency, the defendant may show, by way of defense and setoff, that the property sold was fairly worth the amount of the debt or that the amount bid was substantially less than the true value of the property and thereby defeat any deficiency judgment against him in whole or in part. This North Carolina statute has no application if the purchaser at the trustee's sale be other than the mortgagee. It affects only foreclosures under powers of sale and does not apply to foreclosure sales made pursuant to an order or decree of the court. The new section 1083 contains no such limitations and, as we hold, cannot be sustained (as was this North Carolina statute) on the principle that the obligation of a contract is not impaired by a statute limiting the remedy, if a remedy adequate for enforcing the obligation remains or is substituted.

(7) In short, our conclusion is that section 1083 of the Civil Practice Act, as amended by chapter 510 of the Laws of 1938, cannot be constitutionally applied to mortgage contracts previously made and that as to such contracts the former section 1083 is in force and effect.

The order of the Appellate Division should, therefore, be reversed and that of the Special Term affirmed and its judgment reinstated, without costs.

LEWIS, J. (dissenting). Our problem is to determine whether section 1083 of the Civil Practice Act, as amended by chapter 510 of the Laws of 1938 (effective April 7, 1938), may be constitutionally applied to proceedings upon the foreclosure of a mortgage executed prior to April 7, 1938.

From time to time Hammond & Carpenter Corporation had secured commercial loans from the plaintiff-appellant, to which it will be convenient to refer as the bank. The payment of those loans was guaranteed by George U. Ham-

mond and James J. Carpenter, now deceased, whose executors are defendants in this action. As security for his obligation as such guarantor, James J. Carpenter executed and delivered to the bank on December 29, 1932, a mortgage which became the subject of the present foreclosure action when, in 1937, Hammond & Carpenter Corporation failed to pay certain of its loans. By the judgment of foreclosure and sale herein, entered November 15, 1938, the amount due the bank was $18,401.25. At the foreclosure sale which followed on December 16, 1938, the mortgaged premises were purchased by the bank's nominee for $4,000. On January 23, 1939, when the bank applied at Special Term for an order confirming the referee's report of sale and for a deficiency judgment in the amount of $16,162.12 against the estate of James J. Carpenter, deceased, the respondent Hammond, as executor, applied by cross-motion, in connection with the bank's application for a deficiency judgment, for an order fixing the real value of the premises foreclosed upon the ground " that the sale price was wholly inequitable * * * " and that it would be unconscionable to permit the bank to enter a deficiency judgment herein according to its demand. In support of his cross-motion, and in opposition to the bank's motion to confirm the referee's report and for a deficiency judgment, the respondent executor submitted affidavits in which the mortgaged premises were appraised at $11,000. In opposition to the respondent's cross-motion the bank asserted that Special Term was without power to grant the relief sought and submitted an affidavit by a real estate expert appraising the property, on the basis of its income, at $6,500. Thereupon Special Term denied the respondent's cross-motion, granted the bank's application to confirm the referee's report of sale and directed the entry of a deficiency judgment.

Upon appeal to the Appellate Division the order at Special Term was modified by striking therefrom the provision granting a deficiency judgment to the bank and directing that such judgment be vacated. The Appellate Division ruled that section 1083 of the Civil Practice Act,

as amended by chapter 510 of the Laws of 1938, impaired no substantial rights of the mortgagee and, as affecting the remedy of the bank as mortgagee in this foreclosure action, that section 1083 as amended is constitutional and that the bank had made no application at Special Term for a deficiency judgment as required by section 1083.

When the mortgage here in foreclosure was executed on December 29, 1932, and thereafter in the year 1937 when the moneys secured thereby were advanced by the bank, section 1083 of the Civil Practice Act read as follows:

" § 1083. Judgment for deficiency. If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the residue of the debt remaining unsatisfied, after a sale of the mortgaged property, and the application of the proceeds, pursuant to the directions contained therein."

On April 7, 1938 — prior to the entry of the deficiency judgment herein — chapter 510 of the Laws of 1938 became effective, amending section 1083 by providing that upon any application for a deficiency judgment in a foreclosure action the mortgagee was required to credit on the mortgage debt either the price obtained for the mortgaged premises at the foreclosure sale, as formerly required by section 1083, or the amount which the court might determine, upon affidavits or otherwise, to be the fair and reasonable market value of the mortgaged premises, whichever is higher. The fact is also stressed that, unlike section 1083-a of the Civil Practice Act and kindred moratory legislation which is limited to the period of emergency declared by the Legislature, the 1938 amendment to section 1083 is permanent in character.

The bank, as appellant before us, argues that under the contract provision of the Federal Constitution, the new provisions of section 1083 may not be applied to the mortgage here in foreclosure which was executed before the amendment became effective. In support of its position the bank

invokes the principle that laws affecting either the enforcement or construction of a contract and subsisting at the time and place of its making and the place of its performance, enter into and form a part of the contract itself. (*Farmers & Merchants Bank* v. *Federal Reserve Bank*, 262 U. S. 649, 660; *New York Life Ins. Co.* v. *Guttag Corp.*, 265 N. Y. 292, 296.) With this rule as a premise the bank challenges, as violative of section 10 of article I of the Federal Constitution, the 1938 amendment to section 1083 which, it is said, affects adversely the bank's rights by changing the remedy by foreclosure which the statute formerly made available to it as a mortgagee — the principal change being that in arriving at the amount of a deficiency judgment there shall be credited upon the mortgage debt either the market value of the mortgaged property, as determined by the court, or the price obtained therefor at the foreclosure sale, whichever is higher. The vice of the new statute is said to be that it changes the medium of payment of the debt which was agreed upon by the parties to the mortgage prior to the amendment of section 1083 and in practical effect compels the bank as mortgagee to accept in payment of the debt a parcel of real property instead of lawful money of the United States.

I have reached the conclusion that the statute thus challenged, when applied to the case at bar, does not impair the contract rights possessed by the bank when the mortgage here in foreclosure was executed. That conclusion has been influenced by an examination of the change in remedies for the collection of a mortgage debt made available to a mortgagee at common law and under statutes prior to the amendment here in question.

Prior to the enactment of the statute from which section 1083 was derived a deficiency judgment could not be had in a foreclosure action. If the proceeds from a foreclosure sale failed to extinguish the mortgage debt and the mortgagee desired to collect any balance due, his only recourse was to an action at law. Finding burdensome the necessity of bringing two actions to collect a mortgage debt, the

Legislature added to the statutory procedure governing foreclosure the permissive measure that a personal judgment for a deficiency might be given in a foreclosure action against any party liable for the mortgage debt. (2 Rev. Stat. [1st ed.] p. 191, §§ 151, 152, 154.) The statute then enacted finally found its place, by transposition and amendment, in the Civil Practice Act as section 1083. (Throop's Code, notes to §§ 1628 and 1630; *Frank* v. *Davis*, 135 N. Y. 275, 277, 278; *Reichert* v. *Stilwell*, 172 N. Y. 83, 88; *Jamaica Savings Bank* v. *M. S. Investing Co.*, 274 N. Y. 215, 218–220.) In tracing the history of this statute it is important to our present inquiry to note the language of Chief Judge CULLEN writing for this court in 1910 in *Rutherfurd Realty Co.* v. *Cook* (198 N. Y. 29, 33): " Before the enactment of those statutes [2 R. S. §§ 151–154] a mortgagee to collect a deficiency was compelled to resort to an action at law after the sale under a decree in equity. *This course may still be pursued, though leave of the court is necessary for the institution of the second action.*" (Emphasis supplied.)

It is thus seen that the Legislature, while favoring and making provision for the collection of the mortgage debt by one action, did not see fit to abolish the action at common law which remains today as a remedy available to the mortgagee under certain conditions. I find nothing in the 1938 amendment to section 1083 which abolishes the separate common-law action where the mortgage was executed after July 1, 1932. The policy of the Legislature adopted in 1830 finds expression in the present statute, that a deficiency judgment shall be sought in the action for foreclosure. However, if a deficiency judgment is not sought in the foreclosure action " the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." This provision indicates that a " right to recover any deficiency " in some other action or proceeding still exists under some circumstances. One of those circumstances is present when the

person liable to the plaintiff for the payment of the mortgage debt is not " made a defendant in the action " and has not " appeared or * * * been personally served with the summons." (§ 1083.) Another circumstance which, with leave of the court (Civ. Prac. Act, § 1078), permits a mortgagee to bring a separate action at law, is present when the person liable for the mortgage debt is joined as a defendant and personally served but there remains a difference between the amount received at the foreclosure sale and the determined value of the property.

Stated otherwise, the change in the law effected by the 1938 amendment does not deprive the mortgagee of the right to receive the full amount of the mortgage debt in the same medium of payment as was afforded to him prior to that amendment. It merely restricts the method previously provided. Then he could demand a deficiency judgment in the foreclosure action or, failing so to demand, there remained for him the right to sue at law subject to leave of the court. (*Rutherfurd Realty Co.* v. *Cook, supra,* p. 33.) There being no specific provision in section 1083 as amended extinguishing the action at law, the presumption is that such a right of action remains conditioned upon the provisions of section 1078 and provided the mortgagee has demanded a deficiency judgment in the foreclosure action. The separate action at law for a deficiency is a common-law right. The court must construe strictly a statute which is susceptible of an interpretation in derogation of the common law. I do not think the Legislature intended to destroy the common-law right of action to recover the full deficiency from the party liable who is joined as a defendant and served, and still preserve the right to recover the full deficiency against one who, either because he is without the State or for some other reason, is not joined as a party defendant and served. By the 1938 amendment to section 1083 the Legislature has said that, where a person liable for the mortgage debt is joined as a defendant and is personally served, the mortgagee must seek a deficiency judgment to avoid (1) an adjudication that the proceeds of the fore-

closure sale of whatever amount shall satisfy the mortgage, and (2) forfeiting a right to recover any deficiency in another action. If a deficiency judgment is asked it may be granted in that amount only which equals the difference between the determined value of the mortgaged property and the debt, or the difference between the sale price and the debt, whichever difference is smaller. If there remains a portion of the debt unsatisfied between the amount received at the sale and the determined value, the mortgagee may bring an action at law on the bond, subject to leave being granted by the court under the provisions of section 1078 of the Civil Practice Act. (*Rutherfurd Realty Co.* v. *Cook, supra,* p. 33.) The constitutionality of section 1078 of the Civil Practice Act has never been challenged. (*Honeyman* v. *Hanan,* 275 N. Y. 382, 392.)

The 1938 amendment to section 1083 does not accomplish as to mortgages executed after July 1, 1932, the result intended by section 1083-a as to mortgages executed prior to that date. Section 1083-a provides that as to mortgages executed prior to 1932: " No judgment shall be granted for any residue of the debt remaining unsatisfied * * * *except as herein provided.*" That provision can only mean, as was pointed out in *Honeyman* v. *Hanan* (*supra,* p. 392), that the statute was " * * * intended to provide an *exclusive* procedure for the entry of a judgment for any residue of a debt secured by mortgage after sale of the mortgaged premises." Its prohibition applied whether a deficiency was demanded in the foreclosure suit or sought to be recovered by a separate action at law. No such exclusive provision governs procedure under section 1083 in reference to mortgages executed after 1932, as was the mortgage now before us. True it is that the procedure outlined in the 1938 amendment to section 1083 for securing a judgment for any amount of the mortgage debt remaining unsatisfied after the sale of the mortgaged property, is not the same as that in effect at the time the mortgage here in suit was executed. But the mortgagee still retains the right to recover the full deficiency on a mortgage executed after

July 1, 1932, where the person liable was not joined as a defendant and personally served. The mortgagee also retains the right to recover in a separate action, subject to section 1078 of the Civil Practice Act, the difference between the amount recovered in the foreclosure action and the amount of the mortgage debt, provided in the foreclosure action he has joined the person liable as a defendant and served him personally, and has asked for a deficiency judgment pursuant to the amended section 1083.

The difference in the scope and purpose of sections 1083 and 1083-a is indicated by the opening sentence of each. Section 1083 states that the procedure thereby provided for determining the amount of the deficiency shall apply only " If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons * * *; " whereas section 1083-a provides that " *No* judgment shall be granted for any residue of the debt remaining unsatisfied * * * " except as therein provided. Admitting that section 1083-a provides an exclusive method of obtaining a deficiency judgment on the foreclosure of mortgages dated prior to July 1, 1932, it is apparent that section 1083 does not apply if the person liable to the plaintiff for the payment of the mortgage debt is not made a defendant in the action or has not appeared or has not been personally served with the summons. In such circumstances section 1083 does not provide the exclusive method for obtaining a deficiency judgment. If the statute is not to be so interpreted but instead is to be understood as providing the exclusive method of obtaining a deficiency judgment where, as in the present case, the party liable is joined and has appeared, then the statute is unconstitutional because it provides for an unreasonable classification of parties defendant and unreasonably discriminates against a party plaintiff who chooses to join as a defendant the party who is liable for the payment of the mortgage debt.

There is no constitutional guaranty that a mortgagee shall always have the right to secure a judgment for the full amount *in one action*. We have seen that for many years prior to the enactment of section 1083 a mortgagee was adequately protected by procedure which then allowed a separate action at law to collect a deficiency. The mortgagee still retains that right and in addition the right to recover a part or all of the deficiency in the foreclosure action.

Finally I am unable to agree with the decision of the Appellate Division that the bank's motion for leave to enter a deficiency judgment was not a sufficient compliance with section 1083 as amended by chapter 510 of the Laws of 1938, to constitute an application thereunder for such a judgment.

I, therefore, dissent from the view of a majority of the court and favor a modification of the order of the Appellate Division by providing for the remission of the case to Special Term with directions to proceed in accord with the provisions of section 1083 of the Civil Practice Act, as amended by chapter 510 of the Laws of 1938, to determine the fair and reasonable market value of the mortgaged premises as a basis for any deficiency judgment which the application of that statute may warrant, and as modified affirmed, without costs.

LEHMAN, Ch. J., FINCH, RIPPEY, SEARS and CONWAY, JJ., concur with LOUGHRAN, J.; LEWIS, J., dissents in opinion.

Ordered accordingly.